[No. A120517. First Dist., Div. One. Feb. 25, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
PORFIRIO ALBERT MEDINA, Defendant and Appellant.

[black redaction bar]

[black redaction bar]

COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MARGULIES, J.**—In 2005, the County of Mendocino (County) filed a petition to recommit defendant Porfirio Albert Medina, an admitted sexually violent predator (SVP), for a period of two years, which was the maximum period of recommitment permitted at the time under the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[1] Prior to any action on the petition, the SVPA was amended to permit SVP's to be committed for an indefinite term. After the County amended the recommitment petition to seek an indefinite term for Medina, he admitted the allegations of the amended petition and consented to imposition of the indefinite term of commitment. Medina now challenges the legality and constitutionality of the recommitment order on several grounds.

In addition, Medina contends that he must be released because a statutory precondition to his original commitment in 2001 was not fulfilled. Before a petition for commitment may be filed, the SVPA requires a suspected SVP to undergo two psychological evaluations conducted pursuant to a protocol established by the State Department of Mental Health (Department). Only if these evaluations result in a finding that the person, in effect, qualifies as an SVP does the SVPA authorize the filing of a commitment petition. Recently, the protocol developed by the Department and used for many years was declared to be an unlawful "underground regulation" because it was implemented without compliance with the Administrative Procedure Act (APA)

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

(Gov. Code, § 11340 et seq.). Because his original commitment was based on evaluations under this invalid protocol, Medina contends, the original petition was void. Finding Medina's constitutional challenges to be without merit and his administrative claim to be an unsuccessful collateral attack on the original judgment of commitment, we affirm.

## I. BACKGROUND

On August 22, 2005, the district attorney filed a petition to extend the commitment of Medina as an SVP (recommitment petition). At the time, the SVPA limited the term of commitment of a person found to be an SVP to two years. (Former § 6604.) The recommitment petition alleged that Medina had been convicted in 1995 of two counts of lewd and lascivious acts upon a child (Pen. Code, § 288, subd. (a)), as well as other earlier sex crimes upon children. It further alleged that Medina originally had been committed as an SVP after admitting the allegations in a petition filed in October 2001, and that he was recommitted in 2004, after again admitting petition allegations.[2]

In late 2006, section 6604 was amended to provide for an indefinite period of commitment for SVP's. (§ 6604.) In November 2007, prior to trial on the 2005 recommitment petition, the County filed an amended recommitment petition seeking such an indefinite commitment. On January 7, 2008, Medina admitted the allegations of the amended petition and consented to entry of an order imposing an indefinite term of commitment. He then filed a timely notice of appeal from this order extending commitment.

## II. DISCUSSION

In his initial opening brief, Medina contests, on statutory and constitutional grounds, the legality of the recommitment order. In a supplemental brief, he argues that his original commitment petition was void because it was based on an evaluation conducted pursuant to a protocol adopted by the Department in violation of the APA. We first address the novel APA claim.

A.  *The Sexually Violent Predators Act*

The SVPA "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to

---

[2] Despite admitting the allegations of the first recommitment petition, Medina appealed the commitment order. His appellate counsel filed an opening brief raising no issues and seeking independent judicial review under *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. We found no errors in the proceeding and affirmed the recommitment in a nonpublished opinion. (*People v. Medina* (Aug. 10, 2005, A108345).) The Supreme Court has since called into question the availability of *Wende* review for civil commitment orders. (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 537 [53 Cal.Rptr.3d 856, 150 P.3d 738].)

reoffend if released at the end of their prison terms."[3] (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 235 [127 Cal.Rptr.2d 177, 57 P.3d 654].)
▪ When officials believe that a person in custody is an SVP, the person must be "screened by the Department of Corrections and Rehabilitation and the Board of Parole Hearings . . . . in accordance with a structured screening instrument developed and updated by the [Department] in consultation with the Department of Corrections and Rehabilitation." (§ 6601, subd. (b).) Persons identified as SVP's by this screening instrument are then subjected to a "full evaluation" by the Department, conducted "in accordance with a standardized assessment protocol, developed and updated by" the Department. (§ 6601, subds. (b), (c).) The protocol "shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders." (§ 6601, subd. (c).) If, as a result of the full evaluation under section 6601, subdivision (c), two mental health professionals conclude that the person qualifies as an SVP, the Department must request the responsible county to file a commitment petition. (§ 6601, subds. (d), (h).) The person is thereafter entitled to a jury trial on the commitment petition. (§ 6603, subd. (a).)

Under the version of the SVPA in effect when Medina's recommitment petition was filed in 2005, if the district attorney proved beyond a reasonable doubt in the initial commitment proceeding that a person was an SVP, the court was required to commit the person to the Department for two years. The person could not be kept in actual custody for longer than two years unless a petition to extend the commitment was filed. (Former § 6604; *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 802, fn. 6 [107 Cal.Rptr.2d 381, 23 P.3d 611].) The procedures applicable to an initial commitment applied to an extended commitment to the extent possible. (*People v. Ward* (2002) 97 Cal.App.4th 631, 634 [118 Cal.Rptr.2d 599].) Thus, to extend a person's commitment as an SVP, the district attorney had to prove beyond a reasonable doubt that the person remained an SVP upon recommitment. The term of any extended commitment was two years from the end of the previous commitment. (Former § 6604.1, subd. (a).)

▪ Those provisions were changed in 2006 by the enactment of the Sex Offender Punishment, Control, and Containment Act of 2006 (Stats. 2006, ch. 337) and voter approval of Proposition 83, an initiative measure. (Deering's Ann. Welf. & Inst. Code (2009 supp.) appen. foll. § 6604, p. 99.) Following the amendments introduced by these measures, the SVPA still provides that in an initial commitment proceeding the district attorney must prove beyond a

---

[3] A "sexually violent predator" is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).)

reasonable doubt that the person whose commitment is sought is an SVP. (See § 6004.) Now, however, if the court or jury makes that finding, the court must commit the person to the Department for an indeterminate term, rather than a two-year term. (*Ibid.*) Because the term of commitment is indeterminate, the district attorney no longer has to prove at regular intervals, beyond a reasonable doubt, that the person remains an SVP. Instead, the Department must examine the person's mental condition at least once a year and must report annually on whether the person remains an SVP. (§ 6605, subd. (a).) If the Department determines the person is no longer an SVP, the Director of the Department must authorize the person to petition the court for unconditional discharge. (§ 6605, subd. (b).) The person is thereafter discharged from his or her indeterminate commitment unless, at a hearing, the district attorney proves beyond a reasonable doubt that the person is still an SVP. (§ 6605, subds. (c)–(e).)

■ The only other avenue for release from confinement under the amended SVPA is a petition under section 6608. Under this section, a person committed as an SVP, after at least a year of commitment, may petition for conditional release or unconditional discharge without the recommendation or concurrence of the Director of the Department. (§ 6608, subds. (a), (c).) If the court determines that the petition is not frivolous, a hearing is held at which the petitioner has the burden of proof by a preponderance of the evidence. (§ 6608, subds. (a), (i).) If the petitioner demonstrates that he or she is no longer an SVP, the petitioner is placed in a conditional release program for one year, after which a new hearing is conducted. (§ 6608, subd. (d).) The petitioner must be unconditionally released if, at the second hearing, the court is persuaded that he or she is not an SVP, using the same standard of proof. (§ 6608, subds. (d), (i).) Following the denial of a section 6608 petition, an SVP may not file another petition for at least one year. (§ 6608, subd. (h).)

B. *Failure to Comply with the APA*

■ The APA requires every administrative agency guideline that qualifies as a "regulation," as defined by the APA, to be adopted according to specific procedures. (Gov. Code, § 11340.5, subds. (a), (b).) The Office of Administrative Law (OAL) is charged with, among other functions, enforcing this requirement. (Gov. Code, §§ 11340.2, 11340.5, subd. (b).) If the OAL is notified or learns that an administrative agency is implementing a regulation that was not properly adopted under the APA, the OAL must investigate, make a determination, and publish its conclusions. (Gov. Code, § 11340.5, subd. (c).)

A regulation found not to have been properly adopted is termed an "underground regulation." " 'An underground regulation is a regulation that a

court may determine to be invalid because it was not adopted in substantial compliance with the procedures of the [APA].' " (*Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 429 [74 Cal.Rptr.3d 290]; see Cal. Code Regs., tit. 1, § 250.) An OAL determination that a particular guideline constitutes an underground regulation is not binding on the courts, but it is entitled to deference. (*Grier v. Kizer* (1990) 219 Cal.App.3d 422, 435 [268 Cal.Rptr. 244], disapproved on other grounds in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 577 [59 Cal.Rptr.2d 186, 927 P.2d 296].)

■ As noted above, prior to the filing of any commitment petition, the SVPA requires the Department to screen a person identified by prison authorities as an SVP "in accordance with a standardized assessment protocol, developed and updated by" the Department. (§ 6601, subd. (c).) Only if two mental health professionals, applying the assessment protocol, agree that the person fulfills the criteria for an SVP does the Department request the filing of a petition. (§ 6601, subds. (d)–(h); see *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 906 [119 Cal.Rptr.2d 1, 44 P.3d 949].) The purpose of this evaluation is not to identify SVP's but, rather, to screen out those who are not SVP's. "The Legislature has imposed procedural safeguards to prevent meritless petitions from reaching trial. '[T]he requirement for evaluations is not one affecting disposition of the merits; rather, it is a collateral procedural condition plainly designed to ensure that SVP proceedings are initiated only when there is a substantial factual basis for doing so.' " (*People v. Scott* (2002) 100 Cal.App.4th 1060, 1063 [123 Cal.Rptr.2d 253].) The legal determination that a particular person is an SVP is made during the subsequent judicial proceedings, rather than during the screening process. (*Ibid.*)

Early in 2008, a petition was filed with the OAL challenging as underground regulations various provisions of the assessment protocol, which has been issued under the title "Clinical Evaluator Handbook and Standardized Assessment Protocol (2007)," used by the Department to conduct section 6601 evaluations. (See 2008 OAL Determination No. 19 (Aug. 15, 2008) at pp. 1, 3 <http://www.oal.ca.gov/determinations2008.htm> [as of Feb. 25, 2009] (OAL determination).) The OAL found the challenged provisions invalid, concluding that "[t]he challenged provisions in the 'Clinical Evaluator Handbook and Standardized Assessment Protocol (2007)' issued by [the Department] meet the definition of a 'regulation' as defined in [Government Code] section 11342.600 that should have been adopted pursuant to the APA." (OAL determination, at p. 13.) Although the OAL specifically restricted its inquiry to 10 provisions within the protocol (*id.* at p. 2), its decision effectively invalidates the operative content of the protocol. According to a footnote in the Attorney General's supplemental brief, the Department has not challenged the OAL determination and "is revising the

Protocol and handbook to adhere to the [OAL] determination and treat the protocol as a regulation, including adopting it per the APA."

Medina contends that as a result of the Department's use of an invalid protocol in conducting section 6601 evaluations, his SVP commitment "is, and was, illegal and void from before its inception." His argument is that a statutory precondition to the filing of any commitment petition, including his original petition, was a finding by two professionals, using the protocol, that he qualified as an SVP. Because the protocol was void, he argues, "the district attorney did not have the authority, under the statute, to file a petition seeking [his] commitment." The Attorney General does not contest the OAL determination that the protocol is invalid, but he argues that Medina is not entitled to release on these grounds.[4]

■ Medina's challenge to his commitment "from before its inception" is a collateral attack on the initial judgment of commitment, which became final some six years ago.[5] The cognizable grounds for such an attack are restricted to a lack of jurisdiction, since a judgment within the court's jurisdiction can be attacked only directly through appeal. (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 398 [117 Cal.Rptr.2d 427]; *People v. $6,500 U.S. Currency* (1989) 215 Cal.App.3d 1542, 1548 [264 Cal.Rptr. 294].) Further, the permissible jurisdictional challenges are themselves limited, as explained in *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653 [16 Cal.Rptr.3d 76, 93 P.3d 1020] (*American Contractors*): ■ "The term 'jurisdiction,' 'used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition.' [Citation.] Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.] [¶] However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act

---

[4] Given the Attorney General's position, we assume, but do not decide, that the protocol is an invalid underground regulation.

[5] The cases relied on by Medina, such as *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324 [42 Cal.Rptr.3d 47, 132 P.3d 249], *People v. Litmon* (2008) 162 Cal.App.4th 383 [76 Cal.Rptr.3d 122], and *People v. Superior Court* (*Ghilotti*), *supra,* 27 Cal.4th 888, all involve challenges raised on direct appeal or writ. For that reason, they are essentially irrelevant in this context.

without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*Id.* at pp. 660–661; accord, *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 716, fn. 7 [61 Cal.Rptr.3d 689, 161 P.3d 198].)

Although Medina contends that the initial trial court lacked "fundamental" jurisdiction over his petition, thereby producing a void judgment, his claim does not call into question the court's personal or subject matter jurisdiction. As to personal jurisdiction, there is no evidence to suggest, and Medina does not contend, that he lacked minimum contacts with the State of California (e.g., *Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 677–678 [75 Cal.Rptr.3d 828]) or that he was not served with the documents necessary to initiate the proceedings. (See, e.g., *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1439–1440 [29 Cal.Rptr.2d 746]; *Conservatorship of Isaac O.* (1987) 190 Cal.App.3d 50, 53–54 [235 Cal.Rptr. 133].) As to subject matter jurisdiction, the superior court was undoubtedly the appropriate court to hear the commitment petition (Welf. & Inst. Code, §§ 6602, 6604), and there is no claim of untimeliness. (See *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1171 [21 Cal.Rptr.3d 21].) Instead, Medina's argument is that the court had no " 'jurisdiction' (or power) to act . . . without the occurrence of certain procedural prerequisites" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942]), i.e., section 6601 evaluations conducted pursuant to a valid protocol. Under *American Contractors*, this is an argument that the court acted in excess of its jurisdiction, rather than without fundamental jurisdiction. (*American Contractors, supra,* 33 Cal.4th at p. 661; see also *People v. Castillo* (2009) 170 Cal.App.4th 1156, 1178–1179 (*Castillo*).)[6]

---

[6] At oral argument, Medina's counsel contended, without citation to authority, that the trial court lacked personal jurisdiction because the evaluations were not conducted pursuant to a proper protocol. This misunderstands the concept of "personal jurisdiction," which "relates to the power to bind a particular *party,* and depends on the party's presence, contacts, or other conduct within the forum state." (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512 [25 Cal.Rptr.3d 584, 107 P.3d 254].) As explained in the text, Medina's claim is that the court acted in excess of jurisdiction, rather than without jurisdiction.

■ Properly viewed as a claim that the initial commitment court acted in excess of its jurisdiction, Medina's collateral attack fails for at least two reasons. First, Medina forfeited any challenge to the validity of the procedures preceding the filing of the initial petition when he admitted its allegations. ■ " 'The distinction between a lack of jurisdiction over the cause and an act in excess of jurisdiction has significant consequences. For instance, subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel. [Citation.]' [Citation.] By contrast, when a court possesses subject matter jurisdiction, 'a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.]' [Citation.] In addition, objections to acts in excess of a court's jurisdiction may be subject to bars including waiver (the intentional relinquishment of a known right) and forfeiture (the loss of a right through failure of timely assertion)." (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1427 [72 Cal.Rptr.3d 340] [defendant who consented to a sentence is estopped from arguing in a collateral attack that the court lacked jurisdiction to impose the sentence]; see also *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 842 [84 Cal.Rptr.3d 452].) When Medina admitted the allegations of the original petition, in effect consenting to entry of the commitment order, he forfeited a later challenge to that entry as an act in excess of the court's jurisdiction.

Second, as noted in *American Contractors*, "[e]rrors which are merely in excess of jurisdiction . . . are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' " (*American Contractors, supra*, 33 Cal.4th at p. 661.) Medina has not cited any " 'unusual circumstances' " that prevented " 'an earlier and more appropriate' " challenge to the protocol. That is particularly important in these circumstances, since timely assertion of the claim might well have resulted in a correction of the error. He therefore may not raise the claim by way of collateral attack.

■ Medina does not appear to challenge his most recent recommitment petition, the subject of the current appeal, on this ground, although that petition was required to be preceded by the same type of evaluations as his initial commitment petition. (*People v. Superior Court (Ghilotti), supra*, 27 Cal.4th at p. 906.) We would, in any event, conclude that he forfeited any such challenge when he admitted the allegations of the petition and consented to entry of the recommitment order. A "consent judgment," defined as "a judgment entered by a court under the authority of, and in accordance with,

the contractual agreement of the parties," is ordinarily not appealable.[7] (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

Although an exception to this general rule permits appeal when the consent to judgment "was merely given to facilitate an appeal following adverse determination of a critical issue," there is no evidence that Medina's consent was given for this purpose. (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817 [226 Cal.Rptr. 81, 718 P.2d 68], qualified in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143], as stated in *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1428 [77 Cal.Rptr.2d 574].) There was no dispositive motion filed in Medina's proceeding, and the issue of the validity of the protocol does not appear to have been raised at all during the consent proceedings. The transcript from the day set for trial of the recommitment proceeding shows that the attorneys began the morning prepared to proceed. Before Medina was brought into the courtroom, however, the court stated to his attorney, "Mr. Medina has a habit of getting these things started and then, basically, wanting to waive and go back to the hospital. I don't want to put any pressure on him. . . . But I'd sure like to know if that was going to be his position at some point in this proceeding." Counsel responded, "[J]ust to be candid with everyone, that was sort of one of the things I was going to do when I talked to him today, was see where he was going. Because he's not adjusting well anyway down there, so he may want to go back." As soon as Medina was brought in following a break, his attorney told the court, "It's Mr. Medina's intention at this time to—he's going to not contest the commitment proceedings and he will go ahead and submit to the indeterminate sentence. We've discussed this. He understands it's indeterminate and what that means." The court then reviewed with Medina his various rights, including his right to trial. There was no discussion of reserving any rights of appeal, nor were any legal challenges presented or ruled upon. Under these circumstances, Medina forfeited any right to appeal the judgment of commitment to which he consented.[8]

▮ Even if Medina's consent to judgment had not forfeited the issue in connection with his current proceeding, his failure to raise the issue in the trial court would have done so. As discussed in *Castillo*, the probable cause hearing in a SVP proceeding is analogous to a preliminary hearing in a criminal case. Under the rule of *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519,

---

[7] Perhaps conceding either that (1) Medina did not intend to apply this argument to his current recommitment or (2) he has no valid grounds for arguing against forfeiture, Medina did not respond to the Attorney General's forfeiture argument in his supplemental reply brief.

[8] We apply civil precedent because an SVPA commitment proceeding is civil in nature. The rule regarding forfeit of appeal in criminal proceedings is similar, although not quite identical. (See *In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1156–1157 [83 Cal.Rptr.2d 314].)

529 [165 Cal.Rptr. 851, 612 P.2d 941], which has been regularly applied in SVPA appeals (e.g., *People v. Butler* (1998) 68 Cal.App.4th 421, 435 [80 Cal.Rptr.2d 357]), irregularities in a preliminary hearing require reversal only if a defendant can demonstrate that he or she was deprived of a fair trial or otherwise suffered prejudice. (*Castillo, supra,* 170 Cal.App.4th at pp. 1177–1178.) As discussed below, defendant has not made the necessary showing.

■■■ Medina argues, alternatively, that his attorney provided ineffective assistance of counsel in failing to raise the issue of the validity of the protocol, apparently at the time of his original commitment in 2001.[9] " ' " '[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "represen- tation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flow- ing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unpro- fessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " [Citations.]' " (*In re Hardy* (2007) 41 Cal.4th 977, 1018–1019 [63 Cal.Rptr.3d 845, 163 P.3d 853]) "Ineffective assistance of counsel under the Sixth Amendment entails deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of a reasonable probability of a more favorable outcome in the absence of the deficient performance." (*People v. Cole* (2004) 33 Cal.4th 1158, 1202, fn. 11 [17 Cal.Rptr.3d 532, 95 P.3d 811].)

■■■ The apparent failure, until very recently, of any attorney to question the validity of the protocol in the 13-year history of the SVPA appears to refute the claim that Medina's representation fell below the standard of reasonableness, but we do not reach that question because we conclude that Medina has failed to demonstrate prejudice.[10] A court need not determine whether counsel's performance was deficient before examining the prejudice

---

[9] Our reasoning would apply equally whether Medina's ineffective assistance argument was directed at his 2001 commitment or his current recommitment.

[10] The OAL petition challenging the validity of the protocol was filed not by an attorney but by a currently committed SVP. Aside from the recent decision in *Castillo*, we have found only two prior appeals in which the APA issue was raised, both resulting in nonpublished opinions rendered prior to the OAL determination. Medina himself seems to concede that his counsel acted reasonably, stating in his supplemental opening brief, "[P]rior to the OAL's determina- tion, the filing of [a challenge to the recommitment petition's validity] would have been a pointless and futile exercise. Given the preexisting case law upholding the sexually violent predator law against various challenges, no trial court would have determined that the commitment was based upon illegal underground regulations until the OAL . . . ruled that the protocol was, in fact, an illegal underground regulation."

suffered by the defendant as a result of the alleged deficiencies. (*People v. Johnson* (2003) 114 Cal.App.4th 284, 302 [7 Cal.Rptr.3d 492].)

Medina argues that a more favorable outcome would have resulted because, had counsel raised this issue earlier, "the petition would have been dismissed and, depending on the appropriate remedy, appellant either would have been released or would have been reevaluated pursuant to a legally adopted protocol." Assuming that Medina's commitment petition would have been dismissed had counsel raised this issue below, that result alone would not have constituted a "different" outcome for purposes of Sixth Amendment prejudice, which focuses on the ultimate reliability and fairness of the proceedings. (*In re Hardy, supra,* 41 Cal.4th at p. 1018.) As Medina recognizes, there is no reason to believe that a dismissal of the petition on these grounds would have resulted in an abandonment of the commitment proceedings. Rather, the County presumably would have sought Medina's reevaluation under an APA-compliant protocol.

As a result, in order to satisfy the standard for prejudice, Medina must show that had his trial counsel challenged the protocol, thereby obtaining reevaluation, it is reasonably probable he would have been screened out or otherwise would have been found not to be an SVP.[11] Medina points out that there is controversy among mental health professionals concerning the proper manner of evaluating SVP's and argues "it is very possible that the [Department] . . . [will] adopt regulations that create a completely different protocol for the evaluation of sexually violent predators." Even if we assume this to be true, it does not demonstrate that an APA-compliant protocol is reasonably likely to lead to a different conclusion regarding Medina himself. He makes no showing that the characteristics of his particular mental disorder are sufficiently "borderline" or controversial that there is a reason to believe that changes in the protocol would affect his personal standing. Indeed, he does not discuss the evidence in the record relating to his own disorder at all. Instead, he argues that because of the controversy, it is "completely impossible to predict whether [he] will be found to qualify as a sexually violent predator under the new protocol." This is simply insufficient to carry his burden of demonstrating the reasonable probability, rather than the mere possibility, of a different outcome. (See similarly *Castillo, supra,* 170 Cal.App.4th at pp. 1177–1179.)

---

[11] Recognizing that the County would have sought his reevaluation, Medina also argues that the procedure for obtaining an APA-compliant protocol would have taken so long that due process would have required his release before the new protocol was complete. It is doubtful that such a result, which is unrelated to the merits of the commitment petition, qualifies as a "more favorable outcome" for purposes of ineffective assistance law, which is designed to remedy unjustified commitments. In any event, assuming this result was possible, Medina has not demonstrated that an extended delay was sufficiently likely to satisfy the "reasonable probability" requirement.

C.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.  DISPOSITION

The judgment of the trial court is affirmed.

Marchiano, P. J., and Flinn, J.,† concurred.

A petition for a rehearing was denied March 23, 2009, and on March 10, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 13, 2009, S171756.

---

*See footnote, *ante*, page 805.

†Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.