Filed 4/28/14  P. v. Reeves-Moniz CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DIANE REEVES-MONIZ,<br><br>　　　　Defendant and Appellant. | C069582<br><br>(Super. Ct. No. 01F06977) |

The maximum period of commitment for a defendant found not guilty by reason of insanity (NGI) is the maximum sentence for the criminal offense unless extended pursuant to the provisions of Penal Code section 1026.5, subdivision (a)(1).[1]  The extension provisions require that a petition for recommitment be filed prior to the termination of a commitment.  (§ 1026.5, subd. (b)(10); see *People v. Allen* (2007) 42 Cal.4th 91, 94-95 (*Allen*).)  A failure to file a petition prior to the termination of the

---

[1]  A further reference to a section is to the Penal Code unless otherwise designated or apparent from the context.

commitment invalidates an order of extended commitment. (*Allen, supra*, at pp. 104-105.)

Defendant Diane Reeves-Moniz pleaded no contest to charges of attempted kidnapping of a two-year-old child and to misdemeanor battery of the child's mother when the mother interceded while defendant was unbuckling the child's car seat. (§ 208, subd. (b).) She was found NGI in 2003 and was initially committed to a state hospital for three years six months, which did not include any penalty for misdemeanor battery, and was six months short of the correct penalty for attempted simple kidnapping and two years short of the correct penalty for attempted kidnapping of a child under the age of 14. (§ 208, subds. (a) & (b).)[2]

Six months later the court issued a judgment of commitment nunc pro tunc (hereafter nunc pro tunc judgment) to the September 25, 2003, judgment of commitment imposing a maximum commitment of six years, consisting of one-half the maximum term (11 years) for the kidnapping of a child under the age of 14 (§ 208, subd. (b)) and six months for misdemeanor battery. In calculating defendant's maximum period of commitment the court did not deduct conduct credits for the time defendant spent in county jail prior to her commitment. Had the conduct credits been applied in calculating defendant's maximum term of commitment, her commitment would have ended in 2006. A first petition for recommitment was filed in 2007 before the term of commitment provided in the nunc pro tunc judgment had expired.

Defendant argues her initial term of commitment ended before the first extension petition was filed in 2007, because: (1) she did not plead guilty to attempted kidnapping of a child, but only to simple attempted kidnapping; (2) she should not have received a

---

[2] The correct period of commitment for an attempt is one-half of the penalty for the offense. For attempted kidnapping of a child under the age of 14 years the penalty is five and one-half years, one-half of the maximum sentence of 11 years. (§ 208, subd. (b)).

2

consecutive sentence for battery; (3) she should have received conduct credits for the time she spent in county jail, and (4) the nunc pro tunc judgment of commitment increased her term of commitment ex parte, without notice and an opportunity to be heard in violation of her due process rights, right to an attorney and in violation of the proscription against double jeopardy.

She argues she should have been released when the "maximum term of commitment" (§ 1026.5, subd (a)(1)) terminated without the filing of a petition for recommitment "[p]rior to [the] termination" (§1026.5, subd. (b)(10)). (*In re Moye* (1978) 22 Cal.3d 457, 467.) Instead, she agreed to an extension order in 2007. Subsequently her commitment was extended in 2009 and again in 2011. Defendant argues that because she should have been released prior to the first extension of her commitment, the first extension and the subsequent extensions of commitment are invalid. We disagree.

Defendant's appeal is based on the theory that the nunc pro tunc judgment of commitment was invalid when the first extension petition was filed in 2007, making the first extension order void. However, unless the nunc pro tunc judgment was void *ab initio* for want of fundamental jurisdiction of the subject matter or person, it was an unchallenged, valid judgment at the time the extension petition was filed, and defendant's commitment extension was likewise valid. Defendant's arguments relating to the sentences for kidnapping and battery and the allowance of credits do not challenge the trial court's fundamental jurisdiction to enter the nunc pro tunc judgment of commitment, because they do not assert that the trial court lacked jurisdiction over the subject matter or over defendant's person when it entered the nunc pro tunc judgment. Because these arguments would not result in a void nunc pro tunc judgment if we were to accept them, we need not consider them.

The one argument that might challenge the trial court's fundamental jurisdiction to enter the nunc pro tunc judgment is the claim that it was entered ex parte, in violation of defendant's rights of due process and to an attorney, and in violation of the proscription

3

against double jeopardy. However, it is impossible to tell on the record before us whether the nunc pro tunc judgment was in fact entered ex parte.

We conclude defendant has not met her burden of showing that the nunc pro tunc judgment of commitment was void. We shall affirm the subsequent order of extended commitment without prejudice to defendant's filing of a petition for writ of habeas corpus to determine whether the nunc pro tunc judgment of commitment was void for lack of fundamental jurisdiction, and without prejudice to the filing of a petition for writ of habeas corpus to determine whether her initial commitment period was correct.[3]

### FACTUAL AND PROCEDURAL BACKGROUND

Following her arrest on August 31, 2001, for the attempted kidnapping of a two-year-old child and the misdemeanor battery of the child's mother, defendant was placed in custody in the county jail. When defendant committed the offenses, she was under the delusion that the child was the product of 1 of 17 eggs that had been stolen from her during a Pap smear test and fertilized. Shortly after being placed in custody, her counsel expressed doubt as to her competency to stand trial, and after evaluation she was found incompetent and committed to Patton State Hospital, where she was admitted on February 19, 2002.

On April 16, 2002, defendant was certified mentally competent by the staff at Patton State Hospital. She was subsequently returned to the custody of the county jail.

---

[3] Defendant may file a writ of habeas corpus to determine whether the trial court exceeded its jurisdiction by imposing a sentence that was unauthorized by the Penal Code. (*In re Huffman* (1986) 42 Cal.3d 552, 555.) If successful, such a writ would not void the nunc pro tunc judgment. Because defendant would be entitled to some relief for an unauthorized sentence having been imposed, the lesser sentence, if there is one, would apply to shorten her entire term of commitment, including extensions. The People would have the opportunity to petition for an extension of her commitment before she is released, since at no time would the current order of commitment have been void for lack of fundamental jurisdiction of the person or subject matter.

4

She quickly decompensated. She was recommitted to the trial competency program at Patton State Hospital on December 20, 2002, and admitted to the hospital on April 8, 2003.

On June 12, 2003, defendant was again certified mentally competent. She entered a no contest plea to the charges, was diagnosed a chronic paranoid schizophrenic, and, having been found NGI, was committed to Patton State Hospital on September 25, 2003.

The trial court committed defendant to Patton State Hospital for the maximum commitment term of three years and six months, with 601 days credit for time served. By any calculation the maximum commitment term was incorrect. Assuming the offense to which defendant pled no contest was attempted simple kidnapping, the correct sentence for that offense would have been four years, not three years and six months. This is because the maximum term for simple kidnapping is eight years, and for attempted simple kidnapping, that term is halved. (§§ 208, subd. (a), 664, subd. (a).) If the offense to which defendant pled no contest was attempted kidnapping of a child under the age of 14, the correct term was five years six months (one-half of the maximum term of 11 years). (§§ 208, subd. (b), 664, subd. (b).) The original judgment of commitment also did not include a commitment period for the misdemeanor battery offense, which would have added an additional six months. (§§ 1026.5, subd. (a)(3), 243, subd. (a).) Defendant's credits were also incorrectly calculated.

Approximately six months after the first judgment of commitment, the trial court filed the nunc pro tunc judgment, amending the maximum commitment term to six years with credits of 601 days. The six-year period included five and one-half years for attempted kidnapping of a child under the age of 14, and six months for misdemeanor battery.

There is no reporter's transcript for March 22, 2004, the date the nunc pro tunc judgment was entered. No reporter was present at the proceeding. The action is memorialized by a handwritten entry on the minute order form for the case, which read:

5

"c[our]t ord[ers] minutes of 9-25-03 mod[ified] to reflect max[imum] term 6 y[ea]rs [¶] (C[oun]t 1, attempt[ed] kidnap[ping], vict[im] under 14 y[ea]rs -- 5 1/2 y[ea]rs [¶] C[oun]t 2, misd[emeanor] battery -- 6 mo[nth]s = 6 y[ea]rs max[imum])." Also in the record is the nunc pro tunc judgment of commitment, entitled "Amended Commitment to State Hospital." It is in all relevant respects identical to the earlier "Commitment to State Hospital" except the term of commitment is six years instead of three years and six months. Both judgments of commitment state they were "Done In Open Court this 25th day of September, 2003," but the nunc pro tunc judgment displays a file stamp of March 22, 2004. It is therefore unclear on this record whether defendant had notice and an opportunity to be heard prior to the entry of the nunc pro tunc judgment of commitment.

Pursuant to the nunc pro tunc judgment, defendant's commitment term ended on February 1, 2008. Nevertheless, the petition to extend defendant's commitment, filed on April 23, 2007, stated that her commitment ended on September 1, 2007. This discrepancy is likely due to an incorrect calculation of custody credits, as stated in a letter to the trial court from Napa State Hospital, to which defendant was transferred in March 2004, which indicated defendant's actual custody credits should be 2 years and 24 days (754 days). However, there is no indication the trial court ever amended the commitment term following the nunc pro tunc judgment of commitment.

On May 31, 2007, defendant signed a waiver of trial and agreement to extend her commitment for a period of two years from September 1, 2007. The order extending the commitment to September 1, 2009, was filed the next day. One more petition for extension of the commitment was filed by the People and agreed to by defendant in 2009.

The People filed the petition for extended commitment at issue here in May 2011. Defendant did not agree to the extension, and the matter was tried to the court on October 4, 2011. At trial, defendant did not raise any issue about the validity of the nunc pro tunc judgment of commitment, or the subsequent extension orders, nor did she assert that the

6

court had no jurisdiction to enter the current extension order. Instead, she asserted that she did not pose a risk of substantial danger.

She acknowledged that she committed the offenses while suffering a delusion she later realized was untrue. She stated she would never try to kidnap a child again. She also admitted she had received a revelation from Jesus Christ that her daughter had been raped. She did not believe the revelation to be a hallucination or delusion. She also believed at the time of trial that her daughter was one of the five virgins that make up the bride of Christ. However, she denied telling anyone at the hospital that Jesus had been captured and was being held captive in Orange County. She thought the misunderstanding about Jesus being in Orange County may have been because much of the hospital staff was foreign, and likely had misunderstood what she was saying. She said that from now on if she had unusual thoughts or notions she would take it to her higher power (i.e., the father and son, Jehovah and Jesus Christ) and the authorities.

The trial court found defendant to be a person described in Penal Code section 1026.5, subdivision (b)(1), and on October 4, 2011, ordered her commitment extended for another two years.

Defendant's timely notice of appeal states that it is from the judgment entered on October 4, 2011.

DISCUSSION

Defendant's appeal is based upon the Supreme Court's decision in *Allen, supra,* 42 Cal.4th 91, which held that the provision of the Mentally Disordered Offenders Act (§ 2960 et seq.) stating that " '[p]rior to the termination of a commitment under this section, a petition for recommitment may be filed' " is a mandatory time limit, and that failure to file the petition for recommitment prior to the expiration of the prior

7

commitment would invalidate the court's recommitment order. (*Allen, supra*, at pp. 94, 104.) Defendant relies on the analogous provision in the NGI statutes.[4]

Defendant acknowledges that she cannot now directly appeal the 2007 recommitment order. Her argument is that because her initial commitment term expired before the 2007 recommitment petition was filed, the court had no jurisdiction to recommit her in 2007, and it never got jurisdiction back. Her argument that the initial commitment term expired before the 2007 recommitment petition was filed depends upon our determining that the 2004 nunc pro tunc judgment of commitment was wrong. Her appeal is thus a collateral attack against the 2004 nunc pro tunc judgment of commitment, although she does not acknowledge this fact.

A judgment is valid until it is set aside, unless the court lacked fundamental jurisdiction to act. (*People v. Medina* (2009) 171 Cal.App.4th 805, 815; *People v. Williams* (1999) 77 Cal.App.4th 436, 447.) Lack of jurisdiction in a fundamental sense means " ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " (*People v. Medina, supra,* 171 Cal.App.4th at p. 815.) A lack of fundamental jurisdiction is to be distinguished from a case where the court has jurisdiction over the parties and the subject matter, but has no power to act except in a particular manner. (*Id.* at pp. 815-816.) This is often referred to as an act in excess of jurisdiction. (*Ibid.*)

---

[4] Section 1026 et seq. Section 1026.5, subdivision (b)(1), applicable to persons sentenced for a felony committed after July 1, 1977, provides, "A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." The provisions of subdivision (b)(10) provide, "Prior to termination of a commitment under this subdivision, a petition for recommitment may be filed to determine whether the patient remains a person described in paragraph (1)."

A judgment rendered without fundamental jurisdiction is void, while a judgment rendered in excess of jurisdiction is merely voidable. (*People v. Gerold* (2009) 174 Cal.App.4th 781, 787.) Because we determine that the issues raised by defendant would, if correct, result in a nunc pro tunc judgment that is merely voidable, it was effective at the time of the first extension petition, and is not a basis for holding either the first extension or any subsequent extension void. "[A]n individual is subject to all the disabilities of a judgment, commitment or sentence which, though voidable, has not been judicially voided . . . ." (*People v. Dubose* (1971) 17 Cal.App.3d 43, 49.) In *Dubose*, drugs were discovered in the defendant's home when the police arrested him for violation of parole. (*Id*. at p. 46.) It was subsequently determined that the prior conviction for which the defendant had been paroled was invalid. (*Ibid*.) The defendant successfully moved to suppress the evidence against him on the ground he was not a parole violator at the time of the arrest, and that his arrest was therefore invalid. (*Id*. at pp. 46-47.) The Court of Appeal reversed, holding that the subsequent judicial action altering the defendant's status as a parolee did not operate retroactively. (*Id*. at p. 48.) Until the prior conviction was judicially determined to be invalid, the defendant was a parolee and subject to arrest for a parole violation. (*Id.* at pp. 49-50.)

This case is analogous. Unless the trial court had no fundamental jurisdiction to act, the nunc pro tunc judgment was merely voidable, and was a valid order for purposes of determining when to file the initial petition for extension. Consequently, unless the nunc pro tunc judgment was void *ab initio* because the court lacked fundamental jurisdiction, the 2007 recommitment petition was timely filed, it having been filed within the time outlined in the uncontested 2004 nunc pro tunc judgment.

Defendant raises several arguments against the validity of the 2004 nunc pro tunc judgment. Only one of these has the possibility of rendering the 2004 nunc pro tunc judgment void for lack of jurisdiction over the parties or the subject matter.

9

Defendant claims that because of several errors regarding the calculation of her maximum commitment period in the nunc pro tunc judgment, her commitment ended before the 2007 petition was filed to recommit her. She argues the nunc pro tunc judgment imposed the wrong sentence for kidnapping, should not have imposed a consecutive term for the misdemeanor battery, and incorrectly calculated her conduct credits. None of these arguments impacts the trial court's fundamental jurisdiction over the parties and the subject matter. Therefore, none of these can be a basis for concluding the nunc pro tunc judgment was void.

She argues that the nunc pro tunc judgment was entered ex parte in violation of her constitutional right to counsel, right to notice, and in violation of the federal double jeopardy clause, and in violation of state prohibitions against ex parte deprivations of liberty. Only this argument, if correct, could have an impact on the fundamental jurisdiction of the court to enter the nunc pro tunc judgment. We are, however, unable to determine the merits of this argument on appeal from the subsequent commitment extension order because the record is inconclusive on the question of the ex parte nature of the nunc pro tunc judgment.

I

Challenges to the Maximum Commitment Term

Defendant's first attack on the 2004 nunc pro tunc judgment is that the trial court incorrectly sentenced her for attempted kidnapping of a child, which carries a maximum sentence of five and one-half years, when her no contest plea was to attempted kidnapping, which carries a maximum sentence of only four years. She argues she pleaded guilty to a violation of section 207, subdivision (a) only, and that the maximum term for which she could have been committed was half the upper term set forth in section 208, subdivision (a), or four years. She argues the nunc pro tunc judgment

10

increasing her maximum commitment was void because she did not plead guilty to section 208, subdivision (b).[5]

We need not reach the merits of this argument, because assuming the nunc pro tunc judgment incorrectly imposed a commitment term based on attempted kidnapping of a child rather than simple attempted kidnapping, such an error does not result in a lack of jurisdiction in the fundamental sense that the court lacked jurisdiction over the person or subject matter.[6]

A court lacks jurisdiction to impose a sentence that is unauthorized by law, and such a sentence is void. (*Wilson v. Superior Court* (1980) 108 Cal.App.3d 816, 818; *In re Robinson* (1956) 142 Cal.App.2d 484, 486.) However, jurisdiction in this context means the court acted in excess of jurisdiction, rather than without fundamental jurisdiction. (*In re Sandel* (1966) 64 Cal.2d 412, 417; *People v. Getty* (1975) 50 Cal.App.3d 101, 107, fn. 3; *Smith v. Superior Court* (1981) 115 Cal.App.3d 285, 293, fn. 4.) Thus, assuming, without deciding, that the nunc pro tunc judgment was for a

---

[5] The People's request for judicial notice of legislative history materials is granted.

[6] If we were to consider defendant's argument that the nunc pro tunc judgment incorrectly sentenced her for kidnapping a child under the age of 14, rather than simple kidnapping, we would reject it. Section 207 defines the offense of kidnapping, and that is the crime to which defendant entered a no contest plea. Section 207 does not contain a penalty provision. Section 208 describes the penalty for both simple kidnapping and kidnapping of a child under the age of 14. Defendant pleaded no contest to count one of the information, which charged her with "a violation of Section 664/207[, subdivision] (a) of the Penal Code of the State of California, in that said defendant did unlawfully, forcibly and by instilling fear, attempt to steal . . . COLLIN DOE, age 2 years . . . ." A no contest plea " 'admits every element of the offense charged . . . , all allegations and factors comprising the charge contained in the pleading . . . .' " (*People v. Palacios* (1997) 56 Cal.App.4th 252, 257.) The inclusion of the victim's age in the information was not an idle act, but exposed defendant to a longer sentence. Defendant admitted the allegation as part of the plea. She cannot escape the increased sentence when she pleaded no contest to the facts necessary for the increased sentence.

11

commitment term not authorized by law, it was not for this reason a judgment that was void for lack of fundamental jurisdiction. Even if the commitment term in the nunc pro tunc judgment was unauthorized by law, it was valid when the first recommitment order was entered, and did not cause the first recommitment order to be void.

The same analysis applies to defendant's claims that she should not have received a consecutive sentence for misdemeanor battery, and that she should have been awarded conduct credits for the time she spent in county jail. Where a defendant is incorrectly deprived of conduct credits or is sentenced to a term that is longer than is permitted by law, it is an act in excess of jurisdiction, and may be corrected by writ of habeas corpus. (*In re Harris* (1993) 5 Cal.4th 813, 839.) Neither of these mistakes, if they were mistakes, resulted in the absence of the trial court's fundamental jurisdiction to enter the nunc pro tunc judgment. For this reason, we do not reach the merits of these arguments.

When the trial court entered its 2007 recommitment order, the nunc pro tunc judgment was unchallenged, and both parties and the trial court proceeded as though the nunc pro tunc judgment was valid. In fact, defendant signed a written agreement to the extension of her commitment for two years. The nunc pro tunc judgment remains unchallenged to this day. Defendant argues the court has no jurisdiction to consider the prosecution's claim that the initial 2003 judgment of commitment was unlawful *ab initio*, because the People did not appeal the order, yet that is exactly what she asks us to do with respect to the 2004 nunc pro tunc judgment of commitment.

II

Challenges to the Ex Parte Nature of the Nunc Pro Tunc Judgment

Defendant argues the nunc pro tunc judgment was entered ex parte, without the appearance or appointment of counsel, and that this violated her federal Sixth and Fourteenth Amendment rights to counsel, her right to due process, and constituted a double jeopardy violation.

12

As stated, there is no reporter's transcript of the proceeding associated with the nunc pro tunc judgment. The only record of the judgment is: (1) a handwritten entry in the minute order of the court stating that the court ordered the minutes of the September 25, 2003, hearing modified to reflect a maximum term of six years, consisting of five and one-half years for the attempted kidnapping of a person under the age of 14, and six months for the misdemeanor battery; and (2) the amended commitment to state hospital, which is virtually identical to the 2003 judgment of commitment, except the term of commitment is increased to six years with credits of 601 days. No reporter was present at the proceeding.

The minute order is a printed form with handwritten entries for the date, judge, department, custody status, court reporter, and description of the proceedings. The handwritten entry for the nunc pro tunc judgment shows a date of "3-22-04[,]" "Ure" for the judge, "24" in the department column, a horizontal line in both the custody status and court reporter column, and the proceedings are described as "c[our]t ord[ers] minutes of 9-25-03 mod[ified] to reflect max[imum] term 6 y[ea]rs [¶] (C[oun]t 1, attempt[ed] kidnap[ping], vict[im] under 14 y[ea]rs -- 5 1/2 y[ea]rs [¶] C[oun]t 2, misd[emeanor] battery -- 6 mo[nth]s = 6 y[ea]rs max[imum])."

It is impossible to tell on this record whether defendant had notice and an opportunity to be heard before the court's modification of her sentence. Rather than affirmative evidence that defendant did not have notice and an opportunity to be heard, there is an absence of evidence. In the absence of evidence to the contrary, we must presume that the trial court properly followed established law. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended." (*People v.*

13

*Gonzalez* (1990) 51 Cal.3d 1179, 1260, superseded by statute on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.)

Without making a determination as to whether defendant had a right to be notified of the increase in her term of commitment and an opportunity to object, we hold that any such argument at this late date results in a collateral attack on the nunc pro tunc judgment. "[W]hen reference to matters outside the record is necessary to establish that a defendant has been denied a fundamental constitutional right resort to habeas corpus is not only appropriate, but required." (*In re Bower* (1985) 38 Cal.3d 865, 872.) Accordingly, defendant must raise her collateral attack on the presumptively valid nunc pro tunc judgment of commitment in a petition for habeas corpus, which is not confined to the record on appeal. (§ 1487; *People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1; *In re Crew* (2011) 52 Cal.4th 126, 149.) It is not properly raised in this appeal from a subsequent commitment extension.

DISPOSITION

The judgment (order) is affirmed.


      BLEASE      , Acting P. J.


I concur:


      BUTZ      , J.

Nicholson, J., Concurring


I concur in the result, which is an affirmance of the trial court's order of commitment.  However, I respectfully disagree with the dicta concerning other relief defendant may or may not be able to seek.  In my opinion, declaring that our affirmance is "without prejudice to defendant's filing of a petition for writ of habeas corpus to determine whether the nunc pro tunc judgment of commitment was void for lack of fundamental jurisdiction, and without prejudice to the filing of a petition for writ of habeas corpus to determine whether her initial commitment period was correct" (maj. opn. at p. 4) has no legal effect.  Simply declaring that defendant may seek habeas corpus relief does not make if available.  Defendant is no longer serving the initial term of commitment and never challenged it while she was serving it.


_____NICHOLSON_____, J.


1