[No. B184262. Second Dist., Div. Three. July 13, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD McCANN, Defendant and Appellant.

**COUNSEL**

Michael P. Judge, Public Defender, under appointment by the Court of Appeal, Randall Rich and John Hamilton Scott, Deputy Public Defenders, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendant and appellant, Gerald McCann, appeals the trial court's denial of his motion for a finding of factual innocence, under Penal Code section 851.5,[1] following our reversal of his conviction for practicing medicine without a license (former Bus. & Prof. Code, § 2053).

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

The ruling is reversed, and the case is remanded to the trial court with directions to grant McCann's motion.

## BACKGROUND

After a court trial, defendant McCann, an orthopedic surgeon, was found guilty on two felony counts of violating former Business and Professions Code section 2053 (practicing medicine without a license). We reversed those convictions, holding McCann could not have violated section 2053 because he had a valid license to practice medicine at all relevant times. (*People v. McCann* (Feb. 23, 2005, B167088) [nonpub. opn.].)

Upon receipt of the remittitur, the trial court dismissed the charges. McCann then asked the trial court to make a finding, pursuant to section 851.8 (sealing and destruction of arrest records), that he was factually innocent. At a hearing on May 6, 2005, McCann urged the trial court to grant his section 851.8 motion.

"[Defense counsel]: [T]here were no objective factors that justif[ied] official action. And I would base that on the discussion contained in the Court of Appeal decision, specifically at page 5, where they indicated that quote 'McCann's conduct did not violate [Business and Professions Code section] 2053' and at page 6 where they indicated that 'the Attorney General's arguments were faulty and without support.' [¶] They went on in the opinion to say essentially that he could never be charged with practicing medicine without a license because at the time of the prosecution he in fact had a valid license issued by the medical board for all purposes. [¶] So I'll submit.

"The Court: You want to be heard?

"[Prosecutor]: I will submit.

"The Court: To the extent the Court of Appeal's decision does stand, and I respect it and I find that perhaps the actions didn't fit technically the legal description of violation of [Business and Professions Code section] 2053, I can hardly get to the point of making a finding of factual innocence in that the actions by the doctor appeared to me to have been rather aggravated in other circumstances. And maybe they didn't fit the language or the requirements of 2053 but to the extent to assay that there was factual innocence is beyond what I can stomach. [¶] So it is respectfully denied."

The trial court's minute order for May 6, 2005, states: "Defendant's motion for factual findings of innocence is heard, argued and denied. [¶] The court finds it is not supported by the evidence."

## CONTENTION

The trial court erred by denying McCann's motion for a finding of factual innocence under section 851.8.

## DISCUSSION

When this court reversed McCann's convictions, we said: "The Attorney General's theory lacks any apparent support from legal authority, practical usage, or the literal wording of the statute. We agree with McCann's contention that, regardless of what other laws or regulations he may have broken, his alleged conduct could not have violated Business and Professions Code section 2053." (*People v. McCann, supra,* B167088.)

McCann contends that, in light of this decision, the trial court erred when it denied him relief under section 851.8. The Attorney General claims McCann cannot seek relief under section 851.8 because he was convicted and, even if he can, that he has failed to meet section 851.8's requirement of demonstrating there was no reasonable cause to believe he was guilty of the crimes charged. We agree with McCann that the trial court's ruling was in error.

1. *Equal protection requires that section 851.8 must apply to persons in McCann's situation.*

 a. *Section 851.8.*

■ Under section 851.8 "[a]n arrested person may petition the appropriate law enforcement agency or court for destruction of an arrest record where no accusatory pleading has been filed, no conviction has occurred, or the person has been acquitted. A determination that the arrested person is *factually innocent* is generally required before the petition can be granted." (4 Witkin, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 76, p. 276.)

■ The statute allows a person to petition the superior court for a finding of factual innocence in the following situations: "where a person has been arrested and no accusatory pleading has been filed" (§ 851.8, subds. (a) & (b)); "where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred" (§ 851.8, subd. (c)); and "[w]henever any person is acquitted of a charge" (§ 851.8, subd. (e)).

The statute does not, on its face, offer relief to a person who has been convicted at trial and then had that conviction reversed on appeal.

McCann argues that for persons whose convictions have been reversed on appeal for *insufficient evidence*, it would violate equal protection to deny

relief under section 851.8 and, therefore, we must construe the statute as covering this limited category of *convicted* defendants. We agree.

### b. *Equal protection principles.*

■ " 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1198 [39 Cal.Rptr.3d 821, 129 P.3d 29].) " 'The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. [Citation.] It also imposes a requirement of some rationality in the nature of the class singled out.' [Citations.]" (*Ibid.*) *"Under the equal protection clause, we do not inquire 'whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." '* [Citation.]" (*Id.* at p. 1199, italics added.)

■ "In resolving equal protection issues, the United States Supreme Court has used three levels of analysis. Distinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest. Classifications based on gender are subject to an intermediate level of review. But most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose. [Citations.]" (*People v. Hofsheier, supra,* 37 Cal.4th at p. 1199.) Under the rational relationship test, " ' " 'a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.* [Citations.]' " ' " (*Id.* at p. 1200.) " '[E]ven in the ordinary equal protection case calling for the most deferential of standards, [courts must ascertain] the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause.' [Citation.]" (*Id.* at p. 1200; see *People v. Fitch* (1997) 55 Cal.App.4th 172, 184 [63 Cal.Rptr.2d 753] ["An equal protection challenge to a statute that creates two classifications of accused or convicted defendants, without implicating a constitutional right, is subject to a rational-basis analysis."].)

### c. *McCann's arguments.*

McCann argues, "There could be no justification for allowing a defendant who is acquitted at trial to make a section 851.8 motion, while precluding such a motion from a defendant who should have been acquitted at trial, but

for some egregious error by the jury or trial court. [¶] Moreover, appellant's claim for relief is even stronger than that of the usual defendant who obtains a reversal due to insufficiency of the evidence. In appellant's case there was not merely a finding that the evidence presented was insufficient, but that the legal theory under which the People were proceeding was untenable. In other words, not only did the People not present sufficient evidence of guilt, but the People could never do so because appellant was legally incapable of committing the crime alleged against him."

### d. *The Attorney General's arguments.*

The Attorney General, on the other hand, argues the two classes of defendants "are not 'similarly situated' because they obtained different results in different proceedings. . . . If a person was acquitted at trial, then the prosecution failed to present enough evidence of his or her guilt under the legal theories presented, or, for whatever reason, the prosecution did not proceed through trial." "[T]he person who was convicted at trial stands on a different footing. In that circumstance, such as here, a trier of fact did find that the defendant's conduct was criminal under the legal theories presented. Either a grand jury or trial court (in this case, a grand jury) would have found sufficient cause to hold the defendant for trial. The trial court would have, as here, presumably denied dismissal motions."

### e. *Resolution.*

The Attorney General's last two conditions, that pretrial probable cause would have been found and any postevidentiary motion to dismiss would have been denied, can apply to *both* acquitted and convicted defendants. That the defendant was convicted instead of acquitted does not provide a rational basis for the classification where the conviction was subsequently reversed on appeal for insufficient evidence. Indeed, the person who wins an appellate acquittal for insufficient evidence is *more*, not less, likely to be factually innocent than a person acquitted by a jury, because a jury might acquit for reasons having nothing to do with sufficiency of the evidence.

■ This conclusion is fortified by the well-established double jeopardy doctrine that an appellate reversal for insufficient evidence is the functional equivalent of an acquittal at trial.

■ "[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some

fundamental respect, *e. g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. [Citation.] [¶] The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, *such an appellate reversal means that the government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.*" (*Burks v. United States* (1978) 437 U.S. 1, 15–16 [57 L.Ed.2d 1, 98 S.Ct. 2141], fn. omitted, italics added.)

■ "*Burks* was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury. [Citation.] *Because the Double Jeopardy Clause affords the defendant who obtains a judgment of acquittal at the trial level absolute immunity from further prosecution for the same offense, it ought to do the same for the defendant who obtains an appellate determination that the trial court should have entered a judgment of acquittal.* [Citation.] The fact that the determination of entitlement to a judgment of acquittal is made by the appellate court rather than the trial court should not, we thought, affect its double jeopardy consequences; *to hold otherwise 'would create a purely arbitrary distinction' between defendants based on the hierarchical level at which the determination was made.* [Citation.]" (*Lockhart v. Nelson* (1988) 488 U.S. 33, 39 [102 L.Ed.2d 265, 109 S.Ct. 285], italics added.)

■ Because "an appellate ruling of legal insufficiency is functionally equivalent to an acquittal" for double jeopardy purposes (*People v. Hatch* (2000) 22 Cal.4th 260, 271–272 [92 Cal.Rptr.2d 80, 991 P.2d 165]), it follows that, for equal protection purposes, appellate acquittals for insufficient evidence and trial acquittals should be treated the same under section 851.8.

We therefore conclude McCann had the right to seek relief under section 851.8.

### 2. *Trial court erred by ruling McCann failed to show factual innocence.*

The Attorney General argues that, even if section 851.8 applies to defendants winning appellate reversals for insufficient evidence, we should still affirm the trial court because McCann failed to demonstrate he was factually innocent. We disagree.

#### a. *Procedural facts.*

On November 23, 1999, McCann was indicted on two counts alleging patient endangerment during the unauthorized practice of medicine in violation of former Business and Professions Code section 2053.[2] The indictment alleged that on March 1, 1997, and again on April 1, 1997, McCann engaged in a medical practice "without being authorized to perform that act pursuant to a certificate obtained in accordance with Section 1248.1 of the Health and Safety Code."

■ Health and Safety Code section 1248.1, subdivision (g), is a regulatory statute requiring that outpatient clinics be accredited. Health and Safety Code section 1248.8 makes a violation of section 1248.1 a misdemeanor. The prosecution's theory at trial was that McCann practiced medicine without a license because he performed two liposuction procedures at an outpatient clinic lacking proper certification under Health and Safety Code section 1248.1.

#### b. *Section 851.8, subdivision (b).*

Subdivision (b) of section 851.8 provides: "A finding of factual innocence . . . shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. In any court hearing to determine the factual innocence of a party, the initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense for which the arrest was made. If the court finds the arrestee to be factually innocent of the charges for which the arrest was made, then the court shall order the [enumerated agencies] to seal their records of the arrest . . . ."

---

[2] The original charging document was a felony complaint for arrest warrant, filed on June 10, 1999. This complaint was dismissed when McCann was subsequently indicted.

" 'Section 851.8 is for the benefit of those defendants who have not committed a crime. It permits those petitioners who can show that the state should never have subjected them to the compulsion of the criminal law— because no objective factors justified official action—to purge the official records of any reference to such action. . . . Hence, much more than a failure of the prosecution to convict is required in order to justify the sealing and destruction of records under section 851.8.' [Citation.]" (*People v. Adair* (2003) 29 Cal.4th 895, 905 [129 Cal.Rptr.2d 799, 62 P.3d 45].) "[A] reviewing court must apply an independent standard of review and consider the record de novo in deciding whether it supports the trial court's ruling [on a section 851.8 motion]." (*Ibid.*)

### c. *McCann's conviction reversed.*

In reversing McCann's conviction, we held "his alleged conduct *could not have* violated Business and Professions Code section 2053." (*People v. McCann, supra*, B167088, italics added.) That is, more than just finding there was insufficient evidence to sustain the conviction, we found McCann could not possibly have committed the offense with which he was charged. The Attorney General argues the fact the trial court accepted the prosecution's theory of the case proves there was reasonable cause to proceed. However, even though the trial court found McCann guilty beyond a reasonable doubt, our reversal of the conviction demonstrates McCann's case should never have gone to the trier of fact.

### d. *Attorney General's arguments unavailing.*

The Attorney General asserts that, even if McCann could not possibly have been guilty of practicing medicine without a license, there was still reasonable cause to prosecute him for violating Health and Safety Code section 1248.1, the outpatient clinic accreditation statute. The Attorney General argues that, under the theory of the indictment, Health and Safety Code section 1284.1 was a lesser included offense of Business and Professions Code section 2053 and, because McCann could have been prosecuted for violating Health and Safety Code section 1248.1, he cannot demonstrate factual innocence.[3]

---

[3] McCann performed the liposuctions at the Santa Fe Orthopedics outpatient clinic. At trial, the parties stipulated Santa Fe Orthopedics was not licensed for outpatient surgery under Health and Safety Code section 1248.1 on the dates in question, that Santa Fe Orthopedics was held as a corporate entity, and that McCann was the sole shareholder in the corporation.

The problem with this argument is that, whereas Business and Professions Code section 2053 is a felony, Health and Safety Code section 1248.8 is a misdemeanor for which the statute of limitations expired before McCann was indicted.[4]

The Attorney General tries to counter the statute of limitations problem by arguing, "Of course, *technical reasons* for the inability of the People to proceed, standing alone, do not support the granting of relief for factual innocence under section 851.8." (Italics added.) But the cases cited by the Attorney General in support of this argument were talking about failed prosecutions due to the suppression of illegally seized evidence (*People v. Adair, supra,* 29 Cal.4th at p. 905, fn. 3) or a dismissal in the interests of justice under section 1385 (*People v. Glimps* (1979) 92 Cal.App.3d 315, 322–324 [155 Cal.Rptr. 230]).

The California criminal statute of limitations bar, on the other hand, involves a question of jurisdiction[5] and, therefore, is more than just a mere technical snag preventing a successful prosecution. Thus, even if the alleged accreditation violation was a proper lesser included offense, which McCann disputes, it was not a crime for which McCann could have been properly convicted.

 In light of our previous holding that McCann could not possibly have been guilty of practicing medicine without a license, we conclude the trial court erred by denying his motion for a finding of factual innocence.

---

[4] As a crime penalized only by a fine, Health and Safety Code section 1248.8 is governed by a one-year statute of limitations. (§ 802, subd. (a).)

[5] "[I]n California the statute of limitations constitutes a substantive . . . right" and "a conviction based on acts occurring outside the statutory period is invalid irrespective of whether the delay has resulted in *any* prejudice to the defendant . . . ." (*People v. Zamora* (1976) 18 Cal.3d 538, 547 [134 Cal.Rptr. 784, 557 P.2d 75].) "[I]n order to hold a defendant over for trial the People bear the burden of producing evidence (either before the grand jury or at the preliminary hearing) which demonstrates that there is probable cause to believe that the prosecution is not barred by the statute of limitations." (*Id.* at p. 565, fn. 26.) Although *Cowan v. Superior Court* (1996) 14 Cal.4th 367 [58 Cal.Rptr.2d 458, 926 P.2d 438], clarified earlier case law by holding a trial court does not lack "fundamental subject matter jurisdiction over a time-barred offense," a trial court would be acting "in *excess* of jurisdiction" if it allowed prosecution of a time-barred offense without the defendant's express waiver of the statute of limitations. (*Id.* at pp. 373, 374; see also *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [122 Cal.Rptr.2d 326, 49 P.3d 1067] ["In its fundamental sense, 'jurisdiction' refers to a court's power over persons and subject matter. [Citation.] Less fundamentally, 'jurisdiction' refers to a court's authority to act with respect to persons and subject matter within its power."].)

## DISPOSITION

The ruling denying McCann's motion for a finding of factual innocence under section 851.8 is reversed, and the case is remanded to the trial court with directions to grant McCann's motion.

Croskey, J., and Aldrich, J., concurred.