[No. E045848. Fourth Dist., Div. Two. June 3, 2009.]

THE PEOPLE, Plaintiff and Appellant, v.
SCOT B. GEROLD, Defendant and Respondent.

## COUNSEL

Michael A. Ramos, District Attorney, Grover D. Merritt and Stephanie H. Zeitlin, Deputy District Attorneys, for Plaintiff and Appellant.

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

**MILLER, J.**—The People charged defendant and respondent, Scot B. Gerold, by information with assault with a deadly weapon by force likely to produce great bodily injury and terrorist threats. Defendant pled not guilty by reason of insanity (NGI). The court found defendant guilty of the charged offenses after completion of the initial stage of the trial. Upon conclusion of the sanity phase, the court found defendant NGI. Defendant was committed to a state hospital for just over four years. Nearly five and one-half years after his release from confinement, defendant filed a petition pursuant to Penal Code section 851.8 to have his arrest records for the underlying offenses sealed and destroyed. The court granted the request.

On appeal, the People contend the court acted in excess of its jurisdiction in granting the petition because it was not brought within the statutory timeframe, i.e., within two years of the filing of the accusatory pleading. Likewise, the People maintain that defendant failed to sustain his burden of showing, and the court failed to find, good cause for not complying with that statutory deadline. Finally, the People argue that defendant is simply not the type of individual the Legislature envisioned Penal Code section 851.8 would apply to, i.e., while defendant was not "convicted" of the charged offenses, neither was he "acquitted" of the charges, the charges against him were not "dismissed," and defendant was not "factually innocent." We hold that the People forfeited the applicability of the statute of limitations by failing to raise the issue below. Nevertheless, we also hold that section 851.8 was inapplicable to defendant and, thus, reverse the court's order granting his petition to seal and destroy his arrest records.

## FACTUAL AND PROCEDURAL HISTORY

On January 23, 1998, defendant woke up and became angry because he could not find a pair of his jeans. He thought someone within the residence had stolen them. After "raving" for five to 10 minutes, defendant picked up an eight- to nine-inch-long kitchen knife, threatened to kill his father, and moved towards his father moving the knife back and forth in slashing motions. Defendant's father, fearing for his safety, backed outside the home, after which defendant closed and locked the door. Defendant's mother called the authorities. Deputies arrived shortly thereafter and detained defendant.

On January 27, 1998, the People charged defendant by felony complaint with assault with a deadly weapon by force likely to produce great bodily

injury (count 1—Pen. Code, § 245, subd. (a)(1))[1] and terrorist threats (count 2—§ 422). On March 30, 1998, the court held defendant to answer for the charges following a preliminary hearing. The People filed the information on April 13, 1998. On June 10, 1998, the court held both phases of the trial, finding defendant guilty as charged after the first phase and NGI after the second. The court ordered defendant committed to Patton State Hospital and determined that his maximum term of confinement expired on September 22, 2002.

On May 13, 2002, the People filed a petition to extend defendant's period of confinement. On November 6 and 7, 2002, the People proceeded by way of a jury trial on the allegations in the petition. The jury found the allegations in the petition not true. The court thereafter released defendant.

On January 25, 2008,[2] defendant filed a petition to have his arrest records for the underlying offenses sealed and destroyed. On February 29, 2008, the court held a conference regarding the petition in chambers, off the record. On the record thereafter, the court engaged in a colloquy with both parties regarding the issue of whether a defendant who was found NGI is entitled to have arrest records expunged pursuant to section 851.8. The court continued the matter to permit the parties to brief the issue. Both parties filed supplemental briefs. At the hearing thereafter, the court indicated it had read the supplemental briefs and heard argument from defendant's counsel. The court stated, "I think this is a situation that the [L]egislature clearly didn't foresee, and I think we need to dispense a little justice here." The court, therefore, granted the petition.

The People appealed and filed a request that the order to seal and destroy defendant's arrest records be stayed pending the appeal. The trial court granted the stay request.

## DISCUSSION

### A. *Statute of Limitations*

The People contend that since defendant's petition to seal and destroy his arrest records was not filed within the statutory deadline of two years from the filing of the accusatory pleading, the court was barred from granting it. Similarly, the People maintain that since defendant failed to allege, and the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Although the parties both reference this date in their briefs, there is nothing in the record signifying the filing date of the petition. We take judicial notice of the San Bernardino Superior Court register of actions, indicating defendant's petition was filed January 25, 2008. (Evid. Code, §§ 459, subd. (a), 452, subd. (g).)

court failed to find, good cause in relieving him from compliance with that deadline, the court's order granting the petition must be reversed as an act in excess of its jurisdiction. Defendant responds that the People are estopped from raising the statute of limitations because they failed to raise it below. We hold that the People forfeited the applicability of the statute of limitations by failing to raise it at the hearing on the matter.

■ Section 851.8, subdivision (c), provides in pertinent part that "[i]n any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made." If the court makes such a finding, the court shall order the appropriate law enforcement agency to seal the arrest records for three years from the date of the arrest and, thereafter, destroy such records. (§ 851.8, subds. (b), (c).) "[F]or accusatory pleadings filed on or after January 1, 1981, petitions for relief under this section may be filed up to two years from the date of the . . . filing of the accusatory pleading . . . ." (§ 851.8, subd. (*l*).) "Any time restrictions on filing for relief under this section may be waived upon a showing of good cause by the petitioner and in the absence of prejudice." (*Ibid.*) ■ The time limitation imposed in section 851.8, subdivision (*l*), applies to all petitions brought under section 851.8. (*People v. Bermudez* (1989) 215 Cal.App.3d 1226, 1230, fn. 5 [264 Cal.Rptr. 60].)

The People filed the felony complaint on January 27, 1998, and the information on April 13, 1998. Defendant filed the petition to seal and destroy his arrest records on January 25, 2008. Even assuming the latter instrument was the effective accusatory pleading in this case, defendant failed to file his petition within the statutory deadline. Moreover, defendant made no showing of good cause; indeed, he made no showing whatsoever to account for his delay in filing the petition. Assuming arguendo that defendant's confinement to mental institutions between July 1998 and November 2002 would be deemed a per se showing of good cause for the delay in filing the petition during that period, defendant still failed to account for his delay in filing the petition in the nearly five and one-half years that elapsed since his release. Nevertheless, no mention of that delay or the statute of limitations was made in either parties' oral arguments or written submissions regarding the petition. Thus, defendant contends the People are estopped from asserting it now.

■ We hold that the People have *forfeited* the issue by failing to raise it below: "Our Supreme Court has explained that 'jurisdictional errors are of two types. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of

authority over the subject matter or the parties." [Citation.]' [Citation.] The term 'lack of jurisdiction' may also be applied when the court possesses jurisdiction over the subject matter and parties in the fundamental sense but ' "has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." [Citation.]' [Citation.] 'When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and "thus vulnerable to direct or collateral attack at any time." [Citation.]' [Citation.] By contrast, when a court has fundamental jurisdiction to act but acts in excess of jurisdiction, its actions are merely voidable, '[t]hat is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by "principles of estoppel, disfavor of collateral attack or res judicata." [Citation.]' [Citation.] Whereas a lack of fundamental jurisdiction may be raised at any time, a challenge to a ruling in excess of jurisdiction is subject to forfeiture if not timely asserted. [Citation.]" (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1422 [72 Cal.Rptr.3d 340], italics omitted.)

█ Here, as the text of the statute makes plain, the statute of limitations does not implicate fundamental jurisdiction because it does not affect the court's personal or subject matter jurisdiction. The court had jurisdiction over the parties and the petition in the sense that it had the power to relieve defendant from the statutory deadline upon a showing of good cause and the power then to address the merits of the petition. Indeed, in its opening brief, the People contend not that the court acted without *fundamental* jurisdiction, but that it acted in *excess of jurisdiction*. Thus, the statute of limitations is subject to forfeiture. (*People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [122 Cal.Rptr.2d 326, 49 P.3d 1067] [forfeiture is "the loss of a right through failure of timely assertion"].) Nevertheless, in its reply brief the People cite *People v. Williams* (1999) 21 Cal.4th 335 [87 Cal.Rptr.2d 412, 981 P.2d 42] (*Williams*), for the implied proposition that the court here acted without *fundamental* jurisdiction.

█ *Williams* is distinguishable in that it narrowly decided that "if the charging document indicates on its face that the charge is untimely, absent an express waiver, a defendant convicted of that charge may raise the statute of limitations at any time." (*Williams, supra,* 21 Cal.4th at p. 338.) The statute of limitations with regard to the initiation of the prosecution of a criminal act is a substantive, rather than a procedural right, which cannot be forfeited. (*Id.* at pp. 339–340.) "The statute of limitations, when applicable, completely bars the prosecution. To allow defendants to lose the protection of the limitation accidentally could mean that persons could languish in prison under convictions that could not have occurred had they merely thought of the statute of limitations in time." (*Id.* at p. 341.) Thus, strong public policy reasons favored finding a statute of limitations for *the initiation of a criminal proceeding* an issue of fundamental jurisdiction. Such policy reasons do not

exist to so construe the statutory deadline for filing a petition to expunge arrest records. Rather, the section 851.8, subdivision (*l*), timeframe is more akin to a filing deadline for which relief from default may regularly be granted.

B. *Because Defendant Was Not "Factually Innocent" of the Underlying Crimes, He Is Not Entitled to Relief Pursuant to Section 851.8*

The People contend that a defendant found NGI is not entitled to arrest record expungement pursuant to section 851.8. This is because, the People argue, section 851.8 necessitates that the defendant not have been convicted, that the matter be dismissed thereafter or that the defendant have been acquitted, and that the defendant be found factually innocent of the crime. Thus, since a defendant found NGI necessarily has been found to have actually committed the actus reus of the charged offenses and has neither been acquitted nor had the action dismissed, such a defendant has not met the requirements of section 851.8. Defendant contends that a defendant found NGI has, necessarily, not been convicted. Moreover, defendant essentially responds that a defendant found NGI has necessarily been found incapable of committing the crime because he was powerless to meet the essential mens rea element of the crime; thus, such a defendant was effectively factually innocent of the offense. We decline to address the broader issue of whether a defendant found NGI is categorically barred from relief pursuant to section 851.8 because we find that, regardless, defendant was not factually innocent of the underlying charges since reasonable cause exists to believe that defendant committed the offenses for which the arrest was made.

As noted above, section 851.8, subdivision (c), provides, in pertinent part, that "[i]n any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made." If the court makes such a finding, the court shall order the appropriate law enforcement agency to seal the arrest records for three years from the date of the arrest and, thereafter, destroy such records. (§ 851.8, subds. (b), (c).)

The parties below recognized the novelty of defendant's situation. The People noted that "[defendant] was found [NGI], so the question is whether that is factual innocence under the standard. It does not appear to be so. . . . I understand and appreciate the argument that he may have been not guilty of the crime because of his mental state. I understood this was a burglary

conviction;[3] [a] specific intent crime, [which] was negated by reason of his mental illness. However, the standard under . . . [¶] [section 851.8, subdivision (b)] for factual innocence is if it appears that there was no probable cause to believe that the crime was committed. And even though [defendant] may have been insane at the time of the commission of the offense, there certainly was probable cause to believe that the offense was committed." In analyzing the statute and applying it to the factual context of defendant's case, the court noted that " 'there was no trial where an acquittal occurred.' " Defendant acknowledged the veracity of the court's notation; nevertheless, he argued that under section 851.8, subdivision (c), defendant was eligible for the sealing and destruction of his arrest records in that no conviction had occurred. The court responded that defendant was, in fact, convicted. Defendant replied that, in actuality, he was found NGI. The court responded, "[o]h, I see. Okay. I understand."

Defendant noted that had he been convicted, the procedure for "clearing his good name would be [pursuant to section 1203.4]"; however, because he was "acquitted," only the procedures outlined in section 851.8 were applicable. Defendant contended that the court should determine that he was factually "innocent because he was found [NGI]." The court then observed that section 851.8, subdivision (c), applied only to cases that had been dismissed, querying counsel whether the instant action had been dismissed. Counsel responded that defendant had pled NGI: "I cannot say that is a dismissal." Counsel erroneously stipulated that there was no trial; rather, defendant had entered into a plea agreement. The court then noted that "the criminal case had to have been dismissed because it didn't proceed to trial."4 Defendant agreed with the court's assessment. The court reiterated, "[l]ogically that's the case." The People responded, "[b]ut, still, I don't know if it's entered into the same thing as a dismissal, though." The court replied, "[y]ou know, this is interesting; when we came out of chambers, my inclination was to deny this motion, and now I'm considering otherwise." The court then continued the matter to permit the parties to brief the issue.

In its points and authorities in opposition to defendant's petition, the People contended that defendant failed to meet his burden of proving that he was factually innocent of the underlying charges, that there was reasonable cause to arrest defendant, and that section 851.8 provided no mechanism for expunging the records of those found NGI. In his supplemental brief, defendant asserts that "[a]fter an exhaustive search of cases dealing with

---

3 Both the parties and the court made erroneous references to the factual circumstances surrounding defendant's prosecution for the underlying offenses, including that defendant was charged with burglary, that the offenses occurred in 1992 or 1993, and that defendant pled NGI pursuant to a plea agreement.

4 Again, as noted in footnote 3, *ante*, the court and parties mistakenly indicated defendant had pled NGI pursuant to a plea agreement and did not take the matter to trial.

[section] 851.8, we have not come up with a single case dealing with [its] application to a person found [NGI] pursuant to [section] 1026. Not a single one." Defendant cited *People v. McCann* (2006) 141 Cal.App.4th 347, 358 [45 Cal.Rptr.3d 868] (*McCann*), for the proposition that "[e]ven if a defendant were 'factually' guilty of . . . an offense," so long as he could not have been convicted of the crime, "relief must be granted under [section] 851.8." "[W]e ask for the relief under [section] 851.8 so that [defendant] can get a job without having to deal with all these issues." After hearing argument from defense counsel, the court granted the petition, stating that "I think this is a situation that the [L]egislature clearly didn't foresee, and I think we need to dispense a little justice here."

■ "In any court hearing to determine the factual innocence of a party, the initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense for which the arrest was made." (§ 851.8, subd. (b); see also *People v. Laiwala* (2006) 143 Cal.App.4th 1065, 1068 [49 Cal.Rptr.3d 639] (*Laiwala*).) "The present tense 'exists' necessarily means that the existence of reasonable cause depends on the current evidence rather than simply the evidence that existed at the time that the arrest and prosecution occurred. 'In the context of a defendant who seeks a finding of factual innocence notwithstanding probable cause to arrest, facts subsequently disclosed may establish the defendant's innocence.' (*People v. Adair* (2003) 29 Cal.4th 895, 905, fn. 4 [129 Cal.Rptr.2d 799, 62 P.3d 45].)" (*Laiwala, supra*, 143 Cal.App.4th at p. 1069, fn. 3.)

When reviewing a lower court's ruling concerning a petition for sealing and destroying arrest records, an appellate court "must apply an independent standard of review and consider the record de novo." (*People v. Adair, supra*, 29 Cal.4th at p. 905 (*Adair*).) "[T]he appellate court should defer to the trial court's factual findings to the extent they are supported by substantial evidence, [but] it must independently examine the record to determine whether the defendant has established 'that no reasonable cause exists to believe' he or she committed the offense charged." (*Id.* at p. 897.) " ' " 'Reasonable cause' " ' is a well-established legal standard, ' "defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' [Citations.]" (*Id.* at p. 904.)

■ This means defendant must establish " 'as a prima facie matter not necessarily just that the [defendant] had a viable substantive defense to the

crime charged, but more fundamentally that there was no reasonable cause to arrest him in the first place.' [Citation.]" (*Adair, supra*, 29 Cal.4th at p. 905, fn. omitted.) "[T]he record must exonerate [the defendant], not merely raise a substantial question as to guilt." (*Id.* at p. 909.) " 'Section 851.8 is for the benefit of those defendants who have not committed a crime. It permits those petitioners who can show that the state should never have subjected them to the compulsion of the criminal law—because no objective factors justified official action—to purge the official records of any reference to such action. . . .' " (*Id.* at p. 905.)

▮ Here, defendant is not factually innocent of the charges against him. On the contrary, during the initial phase of the trial, the court determined that defendant had committed the acts constituting the crimes of which he was charged. Defendant has not sustained his burden of proving that he was factually innocent, i.e., that "no reasonable cause exists to believe that the arrestee committed the offense for which arrest was made." (§ 851.8, subd. (b).) Even from the current temporal perspective, i.e., with all the benefit of hindsight, we cannot say that an officer, knowing that defendant was legally insane when committing the underlying offenses, would not have had reasonable cause with which to arrest him. Nor could we say, in retrospect, that defendant should not have been subjected to the " 'compulsion of the criminal law—because no objective factors justified official action.' " (*Adair, supra*, 29 Cal.4th at p. 905.) Here, every objective factor would support reasonable cause to arrest and compel defendant to face criminal process. There is no disagreement regarding whether defendant actually committed the acts of assaulting his father with a knife and verbally threatening to kill him. While defendant was determined not to have been sufficiently mentally competent to sustain punishment for his acts, that determination does not equate with factual innocence of the acts underlying the charges against him.

Defendant cites *McCann, supra*, 141 Cal.App.4th at page 358, for the proposition that a finding that a defendant was NGI is the functional equivalent of an acquittal, thus, entitling him to relief pursuant to section 851.8. Likewise, as he did below, defendant cites *McCann* for the additional proposition that factual innocence need only involve a determination that the defendant could not have been convicted for the offense, whether he actually committed the underlying act or not. Thus, defendant maintains that since he was not and could not have been convicted of the underlying offenses because the mens rea element of those crimes was negated by the finding that defendant was legally insane at the time he committed them, he is, necessarily, factually innocent of the charges and, therefore, entitled to expungement of his arrest records. We find *McCann* distinguishable from the present circumstances.

In *McCann*, the defendant was found guilty by court trial of two felony counts of practicing medicine without a license. (*McCann, supra*, 141 Cal.App.4th at p. 351.) The appellate court reversed the convictions finding that the defendant could not have committed the offenses because "he had a valid license to practice medicine at all relevant times." (*Ibid.*) Thereafter, the defendant moved to have his arrest records expunged pursuant to section 851.8. (*McCann*, at p. 351.) The trial court determined that it could not find the defendant factually innocent of the charges despite the reversal; thus, it denied the defendant's petition. (*Ibid.*) On appeal, the court held that the defendant was entitled to seek relief pursuant to section 851.8 because " 'an appellate ruling of legal insufficiency is functionally equivalent to an acquittal.' " (*McCann*, at p. 355.)

While *McCann* established a defendant's right *to seek* relief pursuant to section 851.8 when the defendant's conviction has been reversed for insufficiency of the evidence, it did not conclude that such a defendant would, necessarily, be *entitled* to such relief. (*McCann, supra*, 141 Cal.App.4th at p. 355.) Rather, a determination of the defendant's "factual innocence" would still be required. In *McCann*, the appellate court determined that the defendant was factually innocent because it had already determined he had not committed the charged offenses. (*Id.* at p. 358.) Here, defendant did not have his conviction overturned for insufficiency of the evidence. Moreover, even if a NGI finding could be deemed the functional equivalent of an acquittal, no determination of factual innocence was made. Indeed, as noted above, there is no contention that defendant did not actually commit the *acts* of which he stood accused. Thus, if we were to deem *McCann* properly analogized to the present circumstances, defendant would only be entitled to seek such relief, not be entitled to it. However, as discussed above, because defendant was not factually innocent of the charges, he is not entitled to such relief.

Furthermore, the People in *McCann*, assuming arguendo that the defendant was factually innocent of the charged offenses, contended that there was still reasonable cause to prosecute him for violating the misdemeanor lesser included offense of the felonies. (*McCann, supra*, 141 Cal.App.4th at p. 357.) Hence, it argued that the defendant was not factually innocent and, therefore, not entitled to relief pursuant to section 851.8. (*McCann*, at p. 357.) The appellate court noted, however, that even if the misdemeanor offenses could properly be considered lesser included offenses of the felony charges, prosecution would be barred because the statute of limitations on the misdemeanors had expired by the day the defendant was indicted. (*Id.* at pp. 357–358.) Thus, the court would have lacked fundamental jurisdiction to proceed against the defendant on the misdemeanor charges; hence, he could not have been properly convicted of those offenses. (*Id.* at p. 358 & fn. 5.) However, contrary to defendant's implicit contention, *McCann* did not rule that inability to obtain a conviction necessarily equates to factual innocence. Indeed, the

court did not even conclude that the misdemeanor offenses were properly construed lesser included offenses of the felonies charged against the defendant. Rather, it simply concluded that the defendant was factually innocent of the offenses *with which he was charged. (Id.* at p. 358.) Indeed, the court in *Laiwala* similarly concluded that "[a] factual innocence petition must be granted if the petitioner is 'factually innocent *of the charges for which the arrest was made.'* " (*Laiwala, supra,* 143 Cal.App.4th at p. 1072.) Thus, at best, *McCann* is dictum for the narrow proposition that a defendant may be deemed factually innocent of a charge in which a court lacks fundamental jurisdiction over the offense, i.e., the defendant could not be convicted of the offense because of the expiration of the statute of limitations. We disagree that *McCann* can be construed broadly to convey the principle that any defense that would prohibit a defendant's conviction must equate with a determination of factual innocence for purposes of section 851.8. Factual innocence means " 'not necessarily just that the [defendant] had a viable substantive defense to the crime charged, but more fundamentally that there was no reasonable cause to arrest him in the first place.' [Citation.]" (*Adair, supra,* 29 Cal.4th at p. 905, fn. omitted.)

Finally, defendant cites *Laiwala, supra,* 143 Cal.App.4th 1065, for the proposition that since defendant lacked the requisite mens rea to be found culpable of the charged offenses, he must be deemed factually innocent. In *Laiwala,* the defendant was convicted of grand theft of a trade secret. (*Id.* at p. 1067.) The appellate court reversed the conviction finding that there was " 'insufficient evidence that information taken by [the defendant] qualified as a trade secret . . . .' " (*Ibid.,* italics added.) The defendant filed a petition seeking a finding of factual innocence. (*Ibid.*) The superior court denied the petition. (*Ibid.*) The appellate court ruled that a defendant can establish "factual innocence by demonstrating the absence of reasonable cause to support a single element of the crime." (*Id.* at p. 1070.) Thus, since there was no evidence to support the contention that what the defendant had taken was a trade secret, the defendant was factually innocent of the crime with which he was charged. (*Id.* at p. 1072.) Quoting *People v. Matthews* (1992) 7 Cal.App.4th 1052, 1056–1057 [9 Cal.Rptr.2d 348], the court noted that " '[Some] legal defenses may be so related to the defendant's own conduct that the existence of the defense negates a requisite element of the offense or otherwise eliminates culpability, thereby revealing no reasonable cause to believe the arrestee committed an offense and establishing factual innocence, within the meaning of Penal Code section 851.8.' [Citation.]" (*Laiwala,* at p. 1072.) Hence, defendant contends that because he was found NGI, there is a lack of reasonable cause to support the requisite mens rea elements of the charged offenses, compelling a finding of factual innocence.

We find *Laiwala* distinguishable. First, while *Laiwala* ruled that lack of evidence on a single element supports a finding of factual innocence, that

court held that the defendant was entitled to relief pursuant to section 851.8 based on a lack of reasonable cause to arrest on an actus reus element of the charged offense, not a mens rea element. Second, defendant is not factually innocent in that there was, even when viewed retrospectively, reasonable cause to arrest him and compel him to face criminal process for the charged offenses.

## DISPOSITION

The order granting defendant's petition to have his arrest records for the underlying offenses sealed and destroyed is reversed.

Hollenhorst, Acting P. J., and King, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 17, 2009, S173964.