Filed 2/21/23  P. v. Mitchell CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>SHADAHIA MITCHELL,<br><br>　　　Defendant and Respondent. | A165270<br><br>(San Francisco County<br>　Super. Ct. No. CT21012764) |

The trial court granted defendant Shadahia Mitchell's petition for a finding of factual innocence pursuant to section 851.8 of the Penal Code.[1] The finding triggers the sealing and destruction of the records of Mitchell's December 21, 2021 arrest on firearms and ammunition charges.  The People appeal, arguing that the trial court applied the wrong standard in evaluating Mitchell's petition.  Mitchell had to prove "not necessarily just that [he] had a viable substantive defense to the crime charged, but more fundamentally that there was no reasonable cause to arrest him in the first place." (*People v. Adair* (2003) 29 Cal.4th 895, 905 (*Adair*), quoting *People v. Matthews* (1992) 7 Cal.App.4th 1052, 1056.)  Instead of analyzing whether there was reasonable cause to arrest him, the People argue, the trial court analyzed

_____

[1] Further statutory references are to the Penal Code unless otherwise indicated.

1

potential defenses to the charges against him. Mitchell contends the trial court's analysis was correct, there was insufficient evidence linking him to the firearm and ammunition found in a locked safe in a bedroom in his family's apartment, and the arrest was due to a case of mistaken identity.

A petition for a finding of factual innocence must meet an exacting standard. "In sum, the record must exonerate, not merely raise a substantial question as to guilt." (*Adair*, *supra*, 29 Cal.App.4th at p. 909.) Mitchell's petition did not meet that standard. We reverse the trial court.

## BACKGROUND

On the afternoon of December 21, 2021, undercover members of the Oakland United States Marshal Service (USMS) Task Force and Oakland Police Department were attempting to follow Shadon Mitchell, who is Shadahia Mitchell's brother. They observed the suspect drive a 2022 Infiniti SUV and then "go into 1271 Revere Ave. #A" in San Francisco. The suspect then left in a 2004 Honda Accord, which was registered to Shadahia Mitchell.

Law enforcement followed the suspect to a hotel in Burlingame. Still believing the suspect to be Shadon Mitchell, they then attempted to detain him. "[T]he person who they believed to be Shadon attempted to flee by jumping out of the hotel room window. Officers detained the suspect, who turned out to be Shadahia Mitchell (brother to Shadon Mitchell)."

Defendant Shadahia Mitchell was on probation for making threats to executive officers and for burglary.[2] Officers obtained a search warrant for

---

[2] Going forward, to avoid confusion we will use the convention employed in appellant's opening brief by referring to Shadahia Mitchell by his last name, and referring to his brother by his full name, Shadon Mitchell.

"1271 Revere Ave. #A," which Mitchell had visited before his arrest.[3] Oakland Police Officer Makisig Sevilla searched the upper rear bedroom of the residence, believing it to belong to Mitchell. The officer indicated either Mitchell or Shadon Mitchell were living in the rear bedroom, and found clothing "consistent with the sizes of what . . . Mitchell or Shadon Mitchell would wear." Two other bedrooms belonged to Mitchell's mother and another brother.

During the search, in a closed closet, Officer Sevilla found "a locked metal safe on the top of the closet." Lacking the combination, he pried open the safe using a Halligan bar and hammer. In the safe, the officer found a "Century Arms, 9mm handgun, . . . one silver handgun (unknown brand), miscellaneous handgun ammunition, multiple handgun magazines, [a] handgun magazine containing [an] unknown amount of .22 caliber rounds, boxes of live 9mm rounds, one plastic bag containing numerous live rounds, one Glock handgun part, miscellaneous gold jewelry, and one brown wallet containing indicia in the name of Shadon Mitchell." Officer Sevilla testified he believed the brothers shared the room.

In the same room, in the top drawer of a dresser next to the bed and "a couple of feet" from the closet, the officer found two pieces of mail addressed to Mitchell along with "a gold card with [Mitchell's] name on it." Elsewhere, in the "upper bedroom and living room area," the officer "located six bills of miscellaneous foreign currency" and "miscellaneous indicia in the name of Shadahia Mitchell."

---

[3] The warrant also authorized searches of the hotel room, the 2004 Honda Accord, and the 2022 Infiniti SUV that Mitchell had driven to the residence. The warrant is included in the record before us, but the supporting affidavit establishing probable cause for the search is not.

Officers arrested Mitchell for possession of firearms by a felon (§ 29800, subd. (a)(1)) and for being a felon in possession of ammunition. Two days later, on December 23, 2021, the San Francisco County District Attorney charged Mitchell with two counts of possession of a firearm by a felon and possession of ammunition (§ 30305, subd. (a)(1)). The complaint further alleged Mitchell was ineligible for probation. (§ 1203, subd. (e)(4).)

On January 6, 2022, the district attorney was not ready to move forward with the case due to the need for further investigation and so dismissed and immediately refiled the complaint. (§ 1365.) Mitchell stipulated to re-arraignment and the court released him on his own recognizance (subject to electronic monitoring and a curfew). At a January 20, 2022 preliminary hearing, the court granted the district attorney's motion to dismiss the case in the interests of justice.

On February 10, 2022, Mitchell filed a "Petition for a Finding of Factual Innocence" pursuant to section 851.8. On April 11, 2022, the trial court heard the petition. In addition to reviewing the parties' written submissions, the trial court heard testimony from Officer Sevilla. At the conclusion of the hearing, the trial court found: "the defendant's petition for factual innocence is proper. That there is no reasonable belief that— especially where the gun that was found, or the guns that were found were found in a safe, and in that safe was another person's ID, and the police had no—or it's not stated here that they knew that Shadahia had access to the safe, knew the safe combination, and/or knew what was in the safe, or was ever in the room with the safe, with the guns in the safe. The court finds that there is enough to find for factual innocence in this case and grants the petition."

The People appeal. (§ 851.8, subd. (p)(1).)

4

## DISCUSSION

California law gives someone who has been arrested, but not convicted, the opportunity to seek a finding of "factual innocence" from the court. In addition to formally exonerating the former suspect, such a finding requires that the associated arrest records be destroyed. Section 851.8 provides: "In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made." (§ 851.8, subd. (c).) "If the court finds the petitioner to be factually innocent of the charges for which the arrest was made," then the court will order the arrest records be sealed and subsequently destroyed. (*Id.*, subd. (b).)

The trial judge is tasked with " 'distinguishing between those cases where acquittal is based upon actual innocence and those where acquittal is based upon the prosecution's failure of proof.' " (*Adair, supra*, 29 Cal.4th at p. 907, quoting *People v. Scott M.* (1985) 167 Cal.App.3d 688, 699.) When reviewing a finding of factual innocence, we "defer to the trial court's factual findings to the extent they are supported by substantial evidence," but we "must independently examine the record to determine whether the defendant has established 'that no reasonable cause exists to believe' he or she committed the offense charged." (*Adair,* at p. 897, quoting § 851.8, subd. (b).)

A finding of factual innocence " ' "does not mean a lack of proof of guilt beyond a reasonable doubt or even by 'a preponderance of evidence.' [Citation.]" [Citation.] Defendants must "show that the state should never have subjected them to the compulsion of the criminal law—because no objective factors justified official action . . . ." [Citation.] In sum, the record

5

must exonerate, not merely raise a substantial question as to guilt.' " (*People v. Bleich* (2009) 178 Cal.App.4th 292, 300 (*Bleich*), quoting *Adair, supra*, 29 Cal.4th at p. 909.)

Unlike in a criminal trial, the petitioner (i.e., the former defendant), and not the prosecution, bears the burden of proof to show his or her innocence. Section 851.8, subdivision (b) requires: "A finding of factual innocence and an order for the sealing and destruction of records pursuant to this section shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. In any court hearing to determine the factual innocence of a party, the initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense for which the arrest was made."

The petitioner must at least show that " 'no objective factors justified official action[.]' " (*Adair, supra*, 29 Cal.4th at p. 905.) The petitioner must do more than point to the prosecution's failure to go to trial or to convict. " '*Establishing factual innocence . . . entails establishing as a prima facie matter not necessarily just that the [defendant] had a viable substantive defense to the crime charged, but more fundamentally that there was no reasonable cause to arrest him in the first place.*' [Citation.]" (*Bleich, supra*, 178 Cal.App.4th at p. 293, quoting *Adair*, at p. 905, italics added by *Bleich*.) The "reasonable cause" standard is " ' " 'that state of facts as would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a

6

crime.' " ' " (*Bleich*, at p. 293, quoting *Adair*, at p. 904, quoting *People v. Rhinehart* (1973) 9 Cal.3d 139, 151.)

Mitchell notes that he may establish "factual innocence by demonstrating the absence of reasonable cause to support a single element of the crime" (*People v. Laiwala* (2006) 143 Cal.App.4th 1065, 1070 (*Laiwala*)). He focuses on the lack of evidence that he was in knowing possession of either of the two firearms or the ammunition found in the locked safe. (See *People v. White* (2014) 223 Cal.App.4th 512, 524.) Mitchell notes that, at trial, the prosecution would have been required to show that Mitchell "knowingly exercised a right to control the prohibited item, either directly or through another person. [Citations.] Possession may be shared with others. [Citation.] But mere proximity to the weapon, standing alone, is not sufficient evidence of possession." (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, overruled in part on other grounds in *People v. Farwell* (2018) 5 Cal.5th 295, 304, citing *People v. Land* (1994) 30 Cal.App.4th 220, 223–224.)

Mitchell contends that all the prosecution had to go on in his case was his possible physical proximity to the guns and ammunition in the locked safe in the rear bedroom of the apartment he shared with his two brothers and his mother. There was no evidence concerning who had the combination to the locked safe. The wallet found in the safe had indicia that it belonged to his brother.

Mitchell's argument illustrates the prosecution's failure of proof, but it does not establish his actual innocence. (*Bleich, supra*, 178 Cal.App.4th at p. 293.) The evidence permits an inference that both Mitchell and his brother, Shadon Mitchell, had control over the room with the safe, and may have shared possession of the firearms and ammunition. Undercover officers

7

observed Mitchell entering and leaving the apartment at 1271 Revere Avenue, before he proceeded to the hotel in Burlingame where he was later apprehended after climbing out a hotel window. Letters and a gold card with Mitchell's name were found in the dresser drawer near the safe. The closet with the locked safe also contained clothes that matched Mitchell's size, and his brother's size. While the wallet found in the safe included indicia it belonged to Shadon Mitchell, joint possession of the guns and ammunition between the brothers remained entirely plausible. The officers still had reasonable cause to arrest Mitchell.

The court lacked affirmative evidence from any witness testifying that Mitchell did not use the rear bedroom where the safe was found, or even that the clothes in the closet where the safe was found did not belong to Mitchell. While the prosecution lacked evidence that Mitchell knew the combination of the locked safe, the court likewise lacked affirmative evidence that Mitchell did not know it. Again, Mitchell, as the petitioner, bears the burden of proof to show factual innocence. In cases like this one, affirmative evidence in the form of testimony from third parties, like Mitchell's mother or brothers, or from Mitchell himself, could have provided the proof necessary to permit a finding of factual innocence. Mitchell, however, provided no affirmative evidence, and sought to rely exclusively on attorney argument and on the cross-examination of Officer Sevilla.

Establishing factual innocence is no easy task. For example, the decision in *People v. McCann* (2006) 141 Cal.App.4th 347, 355, turned on a question of law. On appeal, the court reversed a doctor's conviction for practicing without a medical license because it found he had a valid license as a matter of law. (*Id.* at p. 351.) In subsequent proceedings, the trial court

refused to find the doctor factually innocent even though he did indeed have a valid license, which required the Court of Appeal to reverse. (*Id.* at p. 358.)

The decision in *Laiwala* likewise reversed a trial court's decision denying a finding of factual innocence because the trial court appeared to be ignoring the Court of Appeal's decision to reverse the defendant's conviction on charges of trade secret misappropriation. (*Laiwala*, *supra*, 143 Cal.App.4th at p. 1067.) The Court of Appeal had found the information at issue could not constitute a trade secret as a matter of law, and so the defendant had to be factually innocent. (*Id.* at p. 1072.)

The decision in *Bleich*, affirming a trial court finding that the petitioner did not establish factual innocence, illustrates the high bar set by the statute. There, during a preliminary hearing, the trial court dismissed charges against a defendant for stalking and making terrorist threats. (*Bleich*, *supra*, 178 Cal.App.4th at p. 298.) The prosecution had alleged the defendant made threatening phone calls to a subordinate at CVS Pharmacy. The trial court determined that recordings of phone messages were inconclusive and so did not hold the defendant to answer after the preliminary hearing. The court nevertheless denied the defendant's petition for a finding of factual innocence based on "circumstantial evidence" that "led the court 'to think that there might be reasonable suspicion that she had some involvement in the making of this telephone call as an accessory or otherwise.' " (*Id.* at pp. 298–299.) Evidence regarding the defendant's behavior prior to and after her arrest, including her defensiveness, and "bizarre and erratic" behavior, coupled with her failure to make her cell phone available for examination, supported the decision to deny a finding of factual innocence. (*Id.* at p. 303.)

Here, the case against Mitchell suffers from a lack of evidence. The prosecution's decision to dismiss the case in the interests of justice is entirely

9

understandable.  While the record raises a "substantial question" about Mitchell's guilt, it does not exonerate him.

## DISPOSITION

We reverse the finding of the trial court.

_____

Markman, J.*

We concur:

_____

Stewart, P.J.

_____

Miller, J.

*People v. Mitchell* (A165270)

     \* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11