Filed 8/28/20  In re R.M. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.M.,<br><br>        Defendant and Appellant. | A158628<br><br>(Contra Costa County Super. Ct. No. J1900793) |

After R.M. (minor) entered a plea to second degree robbery with a firearm enhancement, the juvenile court adjudged him a ward of the court and committed him to the Contra Costa Youthful Offender Treatment Program (YOTP).

Minor contends (1) the disposition should be vacated because there was no Child and Family Team meeting prior to the order placing him outside the home, and (2) the juvenile court erred in allowing YOTP "unfettered discretion to determine the duration of [his] incarceration."  The first contention is forfeited, and we reject the second contention following *In re J.C.* (2019) 33 Cal.App.5th 741 (*J.C.*).  Accordingly, we affirm.

1

# FACTUAL AND PROCEDURAL BACKGROUND

*Pizza Hut Robbery*[1]

On the evening of August 26, 2019, C.M. was the only employee working at a Pizza Hut in Pinole. She was making a pizza when she heard a noise at the front of the restaurant. She then saw that two individuals wearing all black with black face masks had jumped behind the counter. One of them walked toward her while pointing a black gun and said, "Give me the money." Fearing for her life, C.M. unlocked the cash register and began to grab money to give to the other person, who pushed her out of the way and grabbed the remainder of the cash in the register. Both robbers then punched C.M. in the face, head, and back. The robbers fled on foot on Tara Hills Drive.

Minor and his confederate were apprehended soon after the robbery during a traffic stop in Pinole. In the car, officers found a gray beanie, a 9mm Glock 15-round magazine, latex gloves, and a black ski mask. A 9mm hollow point round was in minor's pocket. Nearby, officers found a semi-automatic 9mm handgun on the sidewalk and two black latex gloves in the street. A partial shoeprint left on the counter at the Pizza Hut matched minor's shoes. Surveillance video from the restaurant showed one of the suspects was wearing black shiny shoes that matched minor's. It was also determined from the surveillance footage that minor had a firearm during the robbery.

---

[1] The facts of the offense are taken from the Report and Recommendation prepared by the probation department (the probation report).

2

*Wardship Petition and Plea*

The Contra Costa County District Attorney filed a wardship petition under Welfare and Institutions Code[2] section 602 alleging minor robbed C.M. (Pen. Code, §§ 211, 212.5, subd. (c)) and personally used a firearm in the commission of the offense (*id.*, § 12022.53, subd. (b)).

The parties reached an agreement, and minor, who was 17 years old at the time of the offense, pleaded no contest to second degree robbery with an enhancement for a principal being armed with a firearm (Pen. Code, § 12022, subd. (a)(1)) (replacing the original enhancement allegation of personal use of a firearm). Minor agreed to a maximum period of confinement of six years.

Minor's aunt, his legal guardian, resided in San Francisco. However, after minor entered his plea, minor's counsel requested the case remain in Contra Costa County so minor could receive services "such as the Youthful Offender Treatment Program" that would not be available in San Francisco County. The probation department recommended the case be transferred to San Francisco County for disposition, but the juvenile court retained the case.

*Probation Report and Recommendation*

The probation report filed in anticipation of disposition recommended, among other things, that minor be adjudged a ward of the court with no termination date and that minor participate in YOTP.

Minor was born in El Salvador. His mother died in a car accident when he was a baby, and his father died of heart complications when he was eight years old. Minor's maternal grandmother took care of him in El Salvador after his father died, but after she passed away, minor came to the United

---

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

States to live with his aunt. Minor was 13 years old when he moved in with his aunt, her husband, and their two children in San Francisco.

According to school records in San Francisco, minor had an overall GPA of .84 and had completed 77 of 220 credits needed to graduate high school. He had not attended school since February 2019. Minor reported he did not like school and found it difficult to focus on schoolwork.

Minor reported he was depressed due to the loss of his family members. He also said he witnessed a lot of violence in El Salvador such as shootings and stabbings, and it appeared to the probation department that minor might have mental health issues that had not been addressed. Minor reported that he first smoked marijuana when he was about 10 years old. When he was 15, he smoked on a weekly basis and had since progressed to smoking every day.

Minor's aunt reported that minor was calm and easy going at home, but he had not been living at her home since April 2019. She said minor disliked following household rules, and this is why he ran away. She said minor had absconded numerous times in the previous two years. Minor would visit his aunt on the weekends and then leave again. He worked at a Burger King and as a mover, and he lived with friends. Minor's aunt supported probation's recommendation of an institutional commitment to address minor's mental health and educational needs.

The current offense was minor's first sustained offense in Contra Costa County, but minor reported he had been on probation in San Francisco County when he was around 13 years old.

Minor was doing well in detention. Juvenile hall staff reported he was "silver status" and said he could improve by not engaging in horseplay in school.

The probation department determined minor had a moderate risk of reoffense and would benefit from a "Selective Intervention" supervision strategy. Minor was accepted for commitment to YOTP after review of his offense and his social history and prior criminal history. A YOTP probation supervisor warned, "however, it has been noted this offense was violent, pre-planned and has caused significant trauma to the victim, therefore, this youth should be cautioned he will face a DJJ recommendation should he not follow the rules and programing of the YOTP."

Minor declined to discuss the current offense, although he did say he was sorry for scaring the victim. The probation department found that minor did not appear to consider the consequences of his actions or how dangerous they were. Minor was "in need of an appropriate school setting, such as an English Second Language Learner class, where he c[ould] catch up on credits and be encouraged to attend school every day." Minor also needed substance abuse treatment and "therapeutic counseling to address his mental health concerns and prior trauma as a child."

The probation department concluded that minor needed a safe and structured environment with 24-hour supervision that could meet his "absconding issues, educational needs, substance use dependency, poor decision making" and help him "take accountability for the instant offense." The recommended service plan was commitment to YOTP, which would include a program to "address problem solving and cognitive self-change" called Thinking for a Change, an assessment for substance abuse dependency with the Cognitive Behavioral Intervention for Substance Abuse program, daily school attendance, JobTech/Employment Skills Training, and therapeutic counseling to deal with loss and trauma.

*Disposition*

The hearing on disposition was held on October 10, 2019. Minor's counsel filed an "Objection to Indefinite Confinement in . . . YOTP . . . and Request to Set Review" the same day. At the beginning of the hearing, minor's counsel stated she was "mostly in agreement with the [probation department's] recommendation," but she objected to "an indefinite commitment" to YOTP as stated in the written objection. The court overruled the objection.

Minor's counsel next told the court that minor was "really upset," it was hard for him because he was from San Francisco, and he was "sad because he hasn't had as many visits as he would like, and it [was] hard for him to be here." Minor told the court, "I don't feel good being here. I know you've already made the decision. It's not easy for me not to see my aunt. I know it's not easy for her either. I lost everything. She is the only person that I have. [¶] That's all."

The juvenile court adjudged minor an indefinite ward of the court. Probation was ordered to take custody of minor and to place him in a court-approved home or institution. Minor was committed to a county institution for a period not exceeding the maximum remaining custody time of five years, 10 months, and 15 days, or until minor reached 21 years of age, whichever occurred first. The court ordered that minor "must successfully complete all phases of the program, follow all treatment requirements and obey all rules and regulations."

A YOTP review hearing was set for March 19, 2020, about five months from the disposition.

**DISCUSSION**

A.    *Lack of a Child and Family Team Meeting*

Minor initially asserts the dispositional order is "void" because the statutory requirement of a Child and Family Team (CFT) meeting was not satisfied before the dispositional hearing. (§ 706.6.)[3] Minor, however, argues the juvenile court in this case acted "in excess of its jurisdiction"—not that the court lacked fundamental jurisdiction—and he recognizes that an order made in excess of jurisdiction is "voidable," not void. (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660–661 [lack of jurisdiction in a fundamental sense means absence of authority over the subject matter or the parties, and in such a case, the ensuing judgment is void; "When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable"].)

Thus, contrary to his initial assertion, minor's appellate claim is that the commitment order is voidable (not void) due to failure to comply with the statutory requirement of a CFT meeting. This claim has been forfeited.

"Whereas a lack of fundamental jurisdiction may be raised at any time, a challenge to a ruling in excess of jurisdiction is subject to forfeiture if not timely asserted." (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1422; see *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [any claim of lack of

---

[3] Section 706.6, subdivision (a), provides in part, "Services to minors are best provided in a framework that integrates service planning and delivery among multiple service systems, including the mental health system, using a team-based approach, such as a child and family team [(CFT)]. A child and family team brings together individuals that engage with the child or youth and family in assessing, planning, and delivering services." The statute provides that "the probation agency shall consider any recommendations of the" CFT in developing its case plan. (§ 706.6, subd. (b)(2).)

jurisdiction in a less fundamental sense than lack of judicial power over persons and subject matter is subject to forfeiture]; *People v. Gerold* (2009) 174 Cal.App.4th 781, 787.)

Here, minor did not object to the failure to convene a CFT meeting at any time before or during the hearing on disposition. " 'All issues, even those involving an alleged constitutional violation, are subject to the rule of forfeiture, and a defendant's failure to raise the issue before the trial court will generally result in the appellate court's refusal to consider it.' [Citation.] Considering an issue for the first time on appeal is often unfair to the trial court, unjust to the opposing party, and contrary to judicial economy because it encourages the embedding of reversible error through silence in the trial court." (*In re M.H.* (2016) 1 Cal.App.5th 699, 713–714.) "It is well established that procedural errors may not be raised at the appellate level if they were not raised in the trial court level." (*In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1344.) "Any other rule would ' " 'permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' " ' " (*In re Riva M.* (1991) 235 Cal.App.3d 403, 412.)

The purpose of the rule of forfeiture " 'is to encourage the parties to bring errors to the attention of the trial court, so they may be corrected.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) In this case, had minor raised his objection with the juvenile court, a CFT meeting could have been ordered. By remaining silent, however, minor has embedded the alleged error in the record. The issue is forfeited, and we see no reason to use our discretion to address an alleged error minor could have corrected at the lower court level

had he chosen to do so. (Cf. *People v. Trujillo* (2015) 60 Cal.4th 850, 859 ["No reason appears why defendant should be permitted to appeal the sentencing court's imposition of such fees after having thus tacitly assented below"].)

Minor argues his claim should not be forfeited because defense counsel rendered ineffective assistance by failing to object to the failure to convene a CFT meeting. To establish ineffective assistance of counsel, minor must show that his counsel's performance was deficient and that he was prejudiced by the deficient performance. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*Id.* at p. 926.)

On this record, it appears a conceivable reason minor's counsel did not object to the lack of a CFT meeting was that she did not think one was necessary. Section 706.6, subdivision (b)(2), required the probation department to "consider any recommendations of the [CFT]" and to "document the rationale for any inconsistencies between the case plan and the [CFT] recommendations."[4] Had minor's counsel been dissatisfied with

---

[4] Here, we note that respondent takes the position that no CFT meeting was required in this case because the statutory mandate applies only "to foster children or those who are being placed into foster care," but minor "was not in the foster care system." *In re A.M.* (2020) __ Cal.App.5th __ [2020 WL 4782520] by our colleagues in Division Three, sheds some light on this issue in recognizing that the CFT meeting requirement applies in the context of juvenile delinquency wardships. In *A.M.*, the court explained a CFT meeting must be convened whenever the probation department recommends placement in "foster care," which is defined to include placements such as short-term residential treatment programs. (*Id.* at *5, fn. 9; see §§ 727.4, subd. (d), 11402, subd. (g).) (In addition, foster care includes community treatment facilities and community care facilities (§§ 727.4, subd. (d), 11402, subds. (i) and (j)).) Here, the precise statutory characterization of YOTP was

9

the probation department's recommendation, she might have asked for a CFT meeting in the hope that it would result in a recommendation she preferred. But minor's counsel stated at the dispositional hearing that she was "mostly in agreement with" the probation department's recommendation, and her only objection was to the "indefinite" nature of the commitment to YOTP. Given that she had no objection to minor's placement at YOTP in itself (and, indeed, had asked for the case to remain in Contra Costa County so that minor could receive services such as YOTP), minor's counsel reasonably could have decided not to ask for a CFT meeting because she was satisfied with the probation department's placement recommendation. We cannot conclude counsel was ineffective in these circumstances.[5]

B. *Commitment to YOTP*

1. Background

In his "Objection to Indefinite Confinement in . . . YOTP . . . and Request to Set Review" filed with the juvenile court, minor objected to an indefinite commitment to YOTP. In support of his objection, he attached the

---

not litigated below or on appeal and is not clear from the record, although minor states in a footnote in his reply brief (without citation to the record) that YOTP is a short-term residential therapeutic program. In any event, we need not resolve this issue because minor's claim fails even assuming the CFT meeting requirement does apply.

[5] We do not mean to imply by our conclusion that CFT meetings are merely notional. As the court observed in *In re A.M.*, *supra*, "The probation department is duty-bound to follow the directives of the Legislature," including the statutory requirement of convening a CFT meeting when placement in foster care is recommended by the probation officer. (*In re A.M.*, *supra*, 2020 WL 4782520 at *6.) The probation department is not free to ignore this statutory mandate. Here, minor's appellate claim fails because it is forfeited.

10

YOTP handbook and a declaration from Joni Spears, a deputy public defender familiar with the structure and procedures of YOTP.

a. *Structure of YOTP*

According to the handbook, the program has four phases and usually begins with orientation (because classes start every three months, and newly committed youths are placed in orientation while they wait for the start of the next class). The first three phases are in custody, and phase four involves release from the institutional setting with "Community Aftercare" and electronic monitoring. According to Spears, the custodial portion of YOTP is a minimum of 10 months, with the first three phases lasting about 12 weeks each.

An Assessment Review Team (ART), which includes the youth's assigned juvenile institution officer and deputy probation officer, is responsible for assessing whether a youth is ready to proceed to the next phase of YOTP. The handbook provides that advancement to the next phase requires completing "12 'good weeks.'" "Continued negative behavior may result in a 'pause.' If [a youth's] program is paused, [he] will have one week to exemplify improved behavior." If his subsequent behavior is satisfactory, the ART board will "unpause" his program. "All weeks added to [the] program will be spent participating in additional treatment." In addition, a youth may be "phased back" in his program if he is "unable to model or display the behavior expected for [his] place in [his] individualized treatment program" after he has been warned about his "inappropriate or unacceptable" behavior but has "failed to modify behavior." Spears stated that there is no court hearing or notice to defense counsel when a youth is phased back, and that a phase-back sanction extends custodial time by at least three months.

11

The handbook further provides: "The length of your individual program will depend on your progress toward meeting your treatment goals and completion of each of the four phases. Your progress through the program is achieve by displaying and or modeling the appropriate and expected behavior for the corresponding phase in the program. Your commitment, as ordered by the court is for the maximum custody time allowed based on your charges or a period not to exceed your 21st birthday, whichever comes first. A court review will be set by your Deputy Probation Officer prior to your successful completion of phase three. Your DPO will then inform the court of your progress, and whether you should be released to Phase Four, GPS Supervision/Community Aftercare."

      b.     *Minor's Objection*

Minor argued, "The court may not delegate sweeping authority to probation to determine what conditions of probation should be or whether to increase custodial time without referring the case back to the court." With an indefinite commitment to YOTP, minor argued, "There is no judicial oversight regarding the individual treatment plan, when a minor is 'phased back', or his progress in the program is stalled because the minor has not attained a goal set and determined by probation. In fact, the indefinite commitment and lack of judicial oversight results in seemingly arbitrary decisions and increased custodial times for minors. [¶] As a result, an indefinite commitment to YOTP is an unlawful abdication of the court's responsibility to set and consider a probationer's term by permitting probation to create ad hoc terms for a minor to complete before release from YOTP."

Minor asked for an order of commitment for a period not to exceed 40 weeks or, in the alternative, for regular court reviews at an interval of no

12

more than 90 days "to assure that probation is properly exercising their authority within the YOTP program."

The juvenile court overruled minor's objection without discussion.

2.    Analysis

Minor contends the juvenile court erred in overruling the objection because the YOTP commitment constituted an improper delegation to the probation department of the juvenile court's responsibility to determine the term of confinement and denied him due process.

Division Five of this court has rejected these arguments in *J.C.*, *supra*, 33 Cal.App.5th 741.  There, juvenile ward J.C. objected to an indefinite commitment to YOTP, arguing a 10-month commitment would be more appropriate.  (*Id.* at p. 743.)

The juvenile court in *J.C.* "declined to order a fixed term of commitment[, stating]: 'YOTP is not a program that necessarily is a 10-month program.  There may be programming or different levels that add up to ten months, but the reality is everyone goes through YOTP at the[ir] particular pace.  Not everyone progresses to the next level or phase at exactly the same time and it really depends on how well each person, individual is doing in the program itself.  [¶] . . . YOTP is meant to have programming that is meant to be completed and there are times that one would not advance through the program within this set time frame. . . .  It's unclear exactly how long it will take to finish the program.  So I don't believe it was ever meant to be exactly a ten-month program.  [¶] . . . [¶] . . . I'm hopeful that [J.C.] will progress through the various phases successfully without any pauses, but again, I can't predict exactly when he will finish the program.  The key is that he finish all the programming at YOTP.' " (*J.C.*, *supra*, 33 Cal.App.5th at p. 744.)  The juvenile court noted that the program might take 10 months or " 'It

13

could be longer.  The key is to completely, successfully complete all phases of the program, and obviously there [is] the maximum period he could be held and that would be basically until his 21st birthday, and I'm sure he will have completed YOTP before then.' " (*Ibid.*)  The court ordered indefinite commitment to YOTP and set a YOTP review hearing for seven months later. (*Ibid.*)

J.C. argued on appeal that the disposition order improperly delegated to the probation officer the authority to determine the length of his commitment because the probation officer would determine whether he successfully completed the first three phases of YOTP, which in turn would determine whether he would be released.  (*J.C.*, *supra*, 33 Cal.App.5th at pp. 744–745.)

The *J.C.* court held that, under *In re Robert M.* (2013) 215 Cal.App.4th 1178 (*Robert M.*), the juvenile court retained "the ultimate authority to determine whether and when [J.C.] successfully completes YOTP."  (*J.C.*, *supra*, 33 Cal.App.5th at p. 745.)  In *Robert M.*, the minor challenged an order committing him to complete sex offender counseling at juvenile hall (housed at the Division of Juvenile Facilities (DJF)) and then return to the juvenile court for possible modification of his sentence.  (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1182.)  The court in *Robert M.* rejected the minor's claim that the order "impermissibly intermingles the responsibilities of the probation department and the responsibilities of DJF," ruling that under the Welfare and Institutions Code the juvenile court, not probation or DJF, retains the ultimate responsibility for the supervision and control of a ward of the court, and retained jurisdiction to determine whether the minor successfully completed the sex offender program.  (*Id.* at p. 1185, citing § 727, subd. (a).)  The *Robert M.* court reasoned, "Unquestionably, a ward placed in

14

a foster home, a residential treatment program, or juvenile hall . . . is answerable on a daily basis to those who operate the program, but that does not change the ultimate responsibility of the juvenile court for the ward's supervision and control." (*Ibid*.) Likewise, the *J.C.* court concluded that the juvenile court retained ultimate authority to determine whether J.C. successfully completed YOTP. (*J.C.*, *supra*, 33 Cal.App.5th at p. 745.)

The court in *J.C.* found the YOTP handbook supported its analysis: "[T]he handbook states the court review will be set '*prior* to your successful completion of phase three,' not after successful completion. (Italics added.) To the extent the handbook assumes the probation officer will determine whether the minor has successfully completed phases one and two, [J.C.] concedes the juvenile court could 'overrule a phase decision by probation' but argues the authority to determine a minor's successful completion has nonetheless been impermissibly delegated to the probation officer. The logical extension of [J.C]'s argument is that *any* decision impacting a minor's progress through YOTP cannot be made by probation in the first instance, even if the court will hold review hearings and retains the authority to overrule the decision. We see no legal basis for such a conclusion. When a minor is committed to a county facility and ordered to complete a treatment program, juvenile courts can and do delegate the day-to-day supervision of the minor, while retaining the ultimate authority to determine whether the minor has successfully completed the program." (*J.C.*, *supra*, 33 Cal.App.5th at p. 747.)

*J.C.* is persuasive, and on similar facts we reach the same conclusion: contrary to minor's contentions, the juvenile court did not delegate to the probation department the court's authority to determine the length of minor's commitment. We disagree with minor's position that *J.C.* was wrongly

15

decided. He suggests the court in *J.C.* was not fully informed "of how the phase back system at YOTP actually operates." We see no basis for minor's suggestion. The *J.C.* court took judicial notice of the handbook, which describes phasing back. (*J.C.*, *supra*, 33 Cal.App.5th at p. 745, fn. 5.) In any event, the *J.C.* court addressed a similar concern in respect to promotion to phases two and three by noting "the juvenile court could 'overrule a phase decision by probation.' " (*J.C.*, *supra*, 33 Cal.App.5th at p. 747.) Likewise, the juvenile court could overrule a phase back decision by probation. We agree with J.C. that "[t]he logical extension of [m]inor's argument is that *any* decision impacting a minor's progress through YOTP cannot be made by probation in the first instance, even if the court will hold review hearings and retains the authority to overrule the decision. We see no legal basis for such a conclusion." (*J.C.*, *supra*, 33 Cal.App.5th at p. 747.)

Minor relies on *In re Gabriel T.* (2016) 3 Cal.App.5th 952 for his due process claim. There, after admitting a violation of probation, the minor was ordered to the Correctional Academy for 12 months consisting of six months of boot camp and six months in an aftercare program. (*Id.* at p. 957.) The juvenile court order also provided the following condition: " 'At any time during the aftercare component the minor may be returned to the Correctional Academy for a one time remediation of 30 days due to a violation of probation or program rules.' " (*Id.* at p. 958.) The appellate court held that this condition was impermissible because it did not comply with statutory requirements of sections 630 and 777. (*Id.* at p. 960.)

Section 777 provides, "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order

changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after a noticed hearing."[6] But an order committing a minor to YOTP does not authorize the probation officer to change or modify a previous order by removing minor from the physical custody of his guardian or by directing commitment to the Youth Authority. (*J.C.*, *supra*, 33 Cal.App.5th at p. 748, fn. 8.) Thus, the commitment order in this case did not violate section 777, and the reasoning of *In re Gabriel T.* does not apply.

To the extent minor suggests that probation might unfairly evaluate his performance in the program, he (or his guardian or attorney) retains the ability to raise the issue before the juvenile court by filing a petition under section 778 to change, modify, or set aside its order on the grounds of a changed circumstance. (See *J.C.*, *supra*, 33 Cal.App.5th at p. 747 ["if [J.C.] contends the probation officer is unfairly assessing [his] performance in YOTP, this would appear to constitute a changed circumstance from the implicit assumption in the dispositional order that the probation officer will fairly assess [his] performance" warranting a section 778 petition].)

Finally, as respondent points out, the juvenile court in this case scheduled a review hearing for five months after the disposition, a shorter review period than the seven months cited approvingly in *J.C., supra,* 33 Cal.App.5th at page 748. At the review hearing, the juvenile court will exercise its supervisory authority by evaluating minor's progress. Minor may raise any concerns or complaints he may have about the administration of the program at that hearing, or he may seek an earlier review by filing a

---

[6] Section 630, subdivision (a), requires the filing of a petition "[i]f the probation officer determines that the minor shall be retained in custody."

section 778 petition.  In sum, this system does not improperly delegate the court's supervisory power.

## DISPOSITION

The judgment is affirmed.

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Stewart, J.


A158628, *People v. R.M.*